CAITLIN C. BLANCHE (SBN 254109)
caitlin.blanche@klgates.com
MORGAN T. NICKERSON (*pro hac vice*)
morgan.nickerson@klgates.com
JEFFREY S. PATTERSON (*pro hac vice*)
jeffrey.patterson@klgates.com
K&L GATES LLP
1 Park Plaza
Twelfth Floor
Irvine, CA 92614
Telephone:  +1 949 253 0900
Facsimile:  +1 949 253 0902

Attorneys for Plaintiff
EPSON AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| EPSON AMERICA, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>CURTIS INTERNATIONAL, LTD AND TECHNICOLOR SA D/B/A TECHNICOLOR USA, INC.<br><br>                    Defendants. | Case No. 8:19-cv-01469-DOC-ADS<br><br>**PLAINTIFF EPSON AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Assigned to the Honorable David O. Carter<br><br>[Proposed Order filed concurrently herewith]<br><br>Date: October 18, 2019<br>Time: 10:00 a.m.<br>Courtroom:  9D<br><br>Complaint filed:  Nov. 19, 2018 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

   **PLEASE TAKE NOTICE** that on Monday, October 18, 2019, at 10:00 A.M., before the Honorable David O. Carter, in Courtroom 9D of the United States Courthouse for the Central District of California, Southern Division, located at the Ronald Reagan Federal Building, United States Courthouse, 411 West Fourth Street, Santa Ana, CA, 92701-4516, Plaintiff / Defendant-in-Counterclaim Epson America, Inc. ("Epson") will and hereby moves the Court to dismiss Defendant / Plaintiff-in-Counterclaim Curtis International Ltd.'s ("Curtis") Counterclaims pursuant to Federal Rules of Civil Procedure 9 and 12(b)(6) for failure to plead with specificity and failure to state a claim, respectively.   The parties met and conferred via telephone on Friday, August 30, 2019 pursuant to L.R. 7-9, and were unable to resolve the objections that are raised in this Motion.

   This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings and papers filed in this action; and such further argument and matters as may be offered at the time of the hearing of this Motion.


                                 K&L GATES LLP


Dated:  September 3, 2019                   By: */s/ Caitlin C. Blanche*
                                           Caitlin C. Blanche
                                           Morgan T. Nickerson
                                           Jeffrey S. Patterson

                                           Attorneys for Plaintiff / Defendant-in-
                                           Counterclaim Epson America, Inc.

**PLAINTIFF EPSON AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND ...............................................................................2

ARGUMENT ........................................................................................................5

I.     ALL OF CURTIS' COUNTERCLAIMS MUST BE DISMISSED UNDER RULE 9(B). ...7

     A.     Curtis Has Not Specifically Pled "Who, What, When, Where, and How" the Retailer Statements Were Made.................................9

     B.     Curtis Has Not Specifically Pled How the Retailer Statements and Press Release Statements Are Fraudulent......................11

II.     ALL OF CURTIS' COUNTERCLAIMS MUST BE DISMISSED UNDER RULE 12(B)(6). ...............................................................................13

     A.     Curtis' State Law Claims (Counts II-VII) Must Be Dismissed Because The Retailer and Press Release Statements Are Absolutely Privileged Under California Law. ...............................13

          1.     Even If the State Law Counterclaims Are Not Privileged (They Are), Counts II, IV, V, VI, and VII Nevertheless Fail. .........................................15

     B.     Curtis' Lanham Act Claim Should Be Dismissed Under Rule 12(b)(6) Because It Has Not Alleged, and Must Be Estopped From Alleging, That the Retailer and/or Press Release Statements Are Material...............................19

CONCLUSION.....................................................................................................22

**PLAINTIFF EPSON AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allergan USA, Inc. v. Prescribers Choice, Inc.*,
    364 F. Supp. 3d 1089 (C.D. Cal. 2019) ...............................................................18, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................7

*Bank of the West v. Superior Court*,
    833 P.2d 545 (Ca. 1992) ........................................................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) ......................................................................................7

*Bobbleheads.com, LLC v. Wright Bros., Inc.*,
    259 F. Supp. 1087 (S.D. Cal. 2017).......................................................................8

*Coupons, Inc. v. Stottlemire*,
    588 F. Supp. 2d 1069 (N.D. Cal. 2008) .................................................................19

*Deutsch v. Flannery*,
    823 F.2d 1361 (9th Cir. 1987) ...........................................................................6, 10

*Erde v. Eastern Savings Bank, FSB*,
    No. 09-CV-2711-VBF, 2009 WL 10673329 (C.D. Cal. June 17, 2009) ................9, 10

*Erickson v. Pardus*,
    551 U.S. 89 (2007)................................................................................................7

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) .................................................................6

*Holt v. Kormann*,
    No. 11-CV-1047-DOC, 2012 WL 123025 (C.D. Cal. Jan. 12, 2012) ................6, 11, 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (2003)................................................................................................16

*Leonardini v. Shell Oil Co.*,
    216 Cal.App.3d 547 (Cal. App. Ct. 1989) .........................................................16, 17

*Melaleuca, Inc. v. Clark*,
    66 Cal.App.4th 1344 (1998) .................................................................................16

*Norwest Mortgage, Inc. v. Superior Court*,
    72 Cal. App. 4th 214 (1999) .............................................................................17, 18

*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*,
    18 Cal.App.5th 95 (2d Cal. App. Ct. 2017) .......................................................14, 15

*Russell v. Rolfs*,
   893 F.2d 1033 (9th Cir. 1990) ..................................................................21

*San Diego County Credit Union v. Citizens Equity First Credit Union*,
   360 F. Supp. 3d 1039 (S.D. Cal. 2019)....................................................20

*Silberg v. Anderson*,
   786 P.2d 365 (1990).................................................................................14

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ................................................................19

*St. Clare v. Gilead Scis., Inc.*,
   536 F.3d 1049 (9th Cir. 2008) ...................................................................7

*Vess v. Ciba–Geigy Corp., USA*,
   317 F.3d 1097 (9th Cir. 2003) ...............................................6, 7, 8, 9, 11

**Statutes**

Cal. Bus. & Prof. Code § 17500 ...................................................................18

Cal. Civ. Code § 47(b) ...........................................................................13, 14, 15

**Other Authorities**

Fed. R. Civ. P 9.................................................................................................2

Fed. R. Civ. P 9(b) ........................................................2, 5, 6, 7, 8, 9, 10, 11, 12, 13

Fed. R. Civ. P 12(b)(6)..............................................................2, 2, 6, 12, 13, 15

**PLAINTIFF EPSON AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In November of 2018, Epson filed this litigation against Defendants based on, *inter alia*, their overstating the brightness of their projectors.  This lawsuit alleges that Defendants have used false lumens rating claims, as well as improper and unsubstantiated claims regarding the general brightness of their projectors (i.e., that they are "SUPER BRIGHT," have LED Lamp Life of "50,000 Hours," and are viewable "Up to 160'"), in their product advertisements and on their product packaging.  By engaging in this false advertising, Epson alleges that Defendants duped consumers into purchasing their projectors instead of Epson's.

Shortly after Epson filed its Amended Complaint and Motion for a Preliminary Injunction, the parties stipulated that Curtis would make changes to its product advertisements and packaging to remedy the false advertising.  ECF No. 38.  Now, months later, Curtis has filed seven Counterclaims against Epson, which allege that Epson alerted Walmart, other unidentified retailers, and consumers to Curtis' false advertising that is the subject of this Complaint, as part of "a scheme" to "eliminate projectors sold at lower price points from the marketplace and in an effort to gain back lost market share[.]"  Curtis contends that Epson's communication of the substance of this litigation to these third-parties constituted false advertising, intentional interference, defamation, trade libel, unlawful business practices, and unfair competition.

Curtis' Counterclaims are baseless.  Even taking its allegations as true, the statements that Curtis alleges Epson to have made are nothing more than communications relaying the substance of its allegations against Curtis in this case. As such, even if Epson made the alleged statements, those statements are privileged. Further, while Curtis generally alleges that Epson fraudulently accused it of falsifying lumens ratings and making other misrepresentations to retailers and consumers, Curtis has not pled any of its claims with the requisite specificity for Epson to adequately

respond to the allegations against it, which is especially critical (and required by Fed. R. Civ. P 9(b)) where, as here, all of the Counterclaims sound in fraud.  And, even if Curtis is not required to meet the heightened pleading requirement of Rule 9(b) (it is), Curtis' Counterclaims should still be dismissed for failure to state a claim under Rule 12(b)(6).  As noted, all of its state law Counterclaims (Counts II-VII) fail because the statements Epson is alleged to have made are privileged, but even if they were not, Curtis has still failed to allege facts sufficient to satisfy the elements of each of them. Curtis' Lanham Act Counterclaim (Count I) is doomed as the well-established doctrine of judicial estoppel does not permit Curtis to argue that lumens ratings are not material to the consumers' purchasing decision when defending against Epson's Lanham Act claim, but that they are material in support of its own Lanham Act Counterclaim (Count I).  As such, all of Curtis' Counterclaims must be dismissed.

## **FACTUAL BACKGROUND**

The facts of this case are straightforward.  Epson commissioned Lumita, Inc. ("Lumita"), an independent technology consulting company that specializes in product testing involving light and color measurement, to test the actual brightness of Defendants' projectors.  ECF No. 25, Ex. C.  Lumita's testing reached the following conclusions:

| Projector | Advertised Lumens | Actual Lumens |
|-----------|-------------------|---------------|
| RPJ116    | 2000              | 32            |
| RPJ129    | 3100              | 190           |
| RPJ136    | 2200              | 38            |

*See* ECF No. 22 ("Am. Compl.") ¶¶ 27-30, 34-36, 39-42.  Defendants' product packaging also contains unsupported statements claiming that its projectors are

"SUPER BRIGHT," have an LED Lamp Life of "50,000 Hours," and can be viewed "Up to 160'," all of which is false. *See id.* ¶¶ 24-26, 33-34, 39-40, 45.

Based on the above misconduct, on November 19, 2018, Epson filed its original Verified Complaint against Defendant Curtis in the United States District Court for the District of South Carolina, alleging that Curtis' lumens ratings and other statements in its product advertisements and on its product packaging were false and misleading. ECF No. 1. On March 12, 2019, Epson filed its Amended Complaint (ECF No. 22) and ten days later filed its Motion for a Preliminary Injunction (ECF No. 25).

Curtis filed its Answer, Affirmative Defenses, and Counterclaims on August 12, 2019. ECF No. 80 (the "Counterclaim"). All seven counts in its Counterclaim are seemingly based on two theories: (1) that Epson made false statements regarding Curtis and its products to Walmart and other unidentified retailers (*see id.,* ¶¶ 86-95);[1] and (2) that Epson made false statements regarding Curtis and its products to consumers (*see id.,* ¶¶ 96-108 & Ex. A)[2], as part of a "scheme to interfere with the relationships between Curtis and one of its largest and most valuable customers—Walmart," in order to "eliminate projectors sold at lower price points from the marketplace and in an effort to gain back lost market share resulting from the decreasing prices of substitute products such as big screen televisions that directly compete with Epson's high-priced projectors." *Id.* ¶ 90.

With respect to the alleged Retailer Statements, Curtis alleges that Epson:

---

[1] The allegations contained in Paragraphs 86-95 of the Counterclaim are hereafter referred to as the "Retailer Statements."

[2] The allegations regarding Epson's March 29, 2019 press release are hereafter referred to as the "Press Release Statements."

**PLAINTIFF EPSON AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  "reached out to Walmart and at least one other major

2  retailer, and provided false information" to them, including

3  "[a]mong other things, [] accus[ing] Curtis of misstating the

4  lumen ratings for its projector products" and "unwarranted

5  demands that Walmart and at least one other retailer cease

6  selling Curtis's projector products."

7  *Id.* ¶ 91.  No further information regarding the timing or circumstances of the Retailer

8  Statements is provided.  Indeed, while specifically naming Walmart, Curtis refused to

9  plead the name of any other entities and instead vaguely alleged communication to "at

10  least one other major retailer."  *See id.*

11  With respect to Epson's March 29, 2019 press release titled, "Epson America

12  Seeks to Protect Projector Market from False Lumens Advertising," Curtis accuses

13  Epson of:

14  • "falsely advertising and conveying that Curtis's lumen claims are

15  inaccurate and/or overstated when this is not the case."  *Id*. ¶ 96.

16  • relaying "false information about Curtis and its projector products,

17  including that Curtis's projectors sold under the RCA brand name and

18  other brand names use false lumen claims' and that 'these projectors

19  typically emit as little as 1% of the claimed lumens performance.'"  *Id.* ¶

20  97.

21  • "falsely assert[ing] that there is an 'industry standard' for measuring

22  lumens and falsely suggests that this industry standard is a requirement."

23  *Id*. ¶ 98.

24  • "display[ing] a false and misleading chart that purports to compare

25  Curtis's 'Claimed Lumens' for seven named models of Curtis's projector

26  products against the 'Actual Lumens Measured' by testing that Epson

27  purportedly conducted.  The chart conveys the false and misleading

28  conclusion that the 'Actual Lumens % of Specified' is a fraction of the

lumen rating advertised by Curtis, ranging between 1% and 6%." *Id.* ¶ 99.

- "cit[ing] a past lawsuit between Epson and iRulu, where Epson claims that it secured a favorable ruling. In doing so, Epson falsely and misleadingly suggests that the facts of that case are the same as the facts at hand in the Epson Action, when this is not the case." *Id*. ¶ 103.

- "falsely convey[ing] that '[p]rojector brightness, measured in lumens and tested according to industry standards, is the number one specification used by consumers in the purchase process to compare performance[.]'" *Id*. ¶ 104.

Curtis alleges that the Press Release Statements were part of a "smear campaign to interfere with Curtis's valuable relationships with its customers by spreading false, misleading and defamatory information about Curtis, its products, and Curtis's advertising." *Id*. ¶ 79.

## **ARGUMENT**

Curtis' Counterclaims are baseless and vexatious. Even a cursory review of the substance of the alleged Retailer and Press Release Statements makes clear that both are nothing more than communications relaying the substance of Epson's allegations against Curtis in this action. California law is clear that statements made in a judicial proceeding, by a party thereto, directly related to the litigation, are privileged and therefore, non-actionable. Curtis has not identified or alleged a single statement made by Epson that pertains to an issue outside the scope of this litigation that disparages Curtis or its products. Because it cannot point to any non-privileged statements to form the basis for its Counterclaims, those Counterclaims fail.

Presumably because the Counterclaims are without any good-faith basis, Curtis fails to allege facts surrounding Epson's purported fraudulent misconduct with sufficient particularity to survive a motion to dismiss. Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud . . . a party must state with particularity

the circumstances constituting fraud or mistake." Practically speaking, Rule 9(b) is interpreted to require that the plaintiff include allegations of "who, what, when where, and how" the fraud occurred so that a defendant is on notice of the claims asserted against it. *Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Furthermore, a pleader must identify the individual who made the alleged representation and the content of the alleged representation." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999). "The plaintiff must set forth what is false and misleading about a statement, and why it is false." *Id.; see also Vess,* 317 F.3d at 1106. A pleading satisfies the particularity requirement if it identifies "the circumstances constituting fraud so that the defendant can prepare an adequate answer." *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987).

Critically, to comply with the heightened pleading requirements of Rule 9(b), "a plaintiff must set forth more than the neutral facts necessary to identify the transaction." *Holt v. Kormann*, No. 11-CV-1047-DOC, 2012 WL 123025, at *2 (C.D. Cal. Jan. 12, 2012) (quoting *Cooper v. Pickett,* 137 F.3d 616, 625 (9th Cir. 1997) (internal citations and quotation marks omitted). "While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, *mere conclusory allegations of fraud are insufficient.*" *Id.* (citing *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989)) (emphasis supplied).

Here, all of Curtis' Counterclaims are based on the same course of alleged misconduct: Epson's communication of the Retailer and Press Release Statements, which it contends Epson fraudulently made to keep Curtis' lower-price projectors off of the market. Because Curtis has not pled specifically "who, what, when, where, and how" the Retailer Statements were made, and has not pled any facts to supports its allegations of fraud with respect to either the Retailer or the Press Release Statements, Curtis' Counterclaims fail to meet the pleading standard of Rule 9(b).

Further, even if the heightened pleading requirement of Rule 9(b) does not apply (it does), Curtis' Counterclaims still must be dismissed under Rule 12(b)(6) for

failure to state a claim.  When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In so doing, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Evaluated under this standard, all of the state law Counterclaims (Counts II-VII) must be dismissed because the alleged false statements on which they are based (i.e., the Retailer and Press Release Statements) are clearly privileged.  Even if privilege does not bar those claims (it does), Curtis has failed to allege key elements of each that nevertheless require dismissal of Counts II-VII.  In regards to its Lanham Act commercial disparagement claim, the well-established doctrine of judicial estoppel does not permit Curtis to argue that lumens ratings are not material to the consumers' purchasing decision when defending against Epson's Lanham Act claim, but that they are material in support of its own Lanham Act Counterclaim (Count I). Thus, all of Curtis' Counterclaims must be dismissed.

## I.     All of Curtis' Counterclaims Must Be Dismissed Under Rule 9(b).

The Ninth Circuit has made clear that the heightened pleading requirement of Rule 9(b) is not strictly limited to claims for fraud, but applies any time a claim is "grounded in" or "sounds in" fraud.  *See, e.g.*, *Vess*, 317 F.3d at 1103-04 ("In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).").  California

federal courts have applied Rule 9(b) to Lanham Act false advertising claims that sound in fraud (Count I),[3] and California state courts have applied Rule 9(b) to state law claims that sound in fraud (Counts II-VII).[4]

Here, all of Curtis' Counterclaims against Epson are subject to the heightened pleading requirement of Rule 9(b) because each is based on Epson's allegedly false Retailer and Press Release Statements, which it alleges were part of "a scheme" to "eliminate projectors sold at lower price points from the marketplace and in an effort to gain back lost market share[.]"  Counterclaim, ¶ 90; *id.* ¶ 79 ("Epson has orchestrated and executed a scheme and an associated smear campaign to interfere with Curtis's valuable relationships with its customers by spreading false, misleading and defamatory information about Curtis, its products, and Curtis's advertising."); *id.*, ¶ 94 ("Epson made its false, misleading and defamatory statements to Walmart, and to at least one other major retailer, with the knowledge that such statements were false and with the intention of interfering with and disrupting Curtis's business relationship and contracts with those retailers in an attempt to gain shelf space in Walmart and other retail stores, eliminate lower priced projectors at retail, and gain increased sales

---

[3] *See, e.g., Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 1087, 1095 (S.D. Cal. 2017) (quoting *Seoul Laser Dieboard Sys. Co., Ltd. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1200 (S.D. Cal. 2013)) ("District courts in the Ninth Circuit have held that the heightened pleading standard of Federal Rule of [Civil] Procedure 9(b) applies to false advertising claims and requires the plaintiff to plead the 'time, place, and specific content of the false representations,' the identities of the parties to the misrepresentation, and what about the statement is claimed to be misleading.").

[4] *See Vess*, 317 F.3d at 1103 ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action.").

of Epson's higher priced products[.]").  As explained below, because Curtis has not met its burden to plead its Counterclaims against Epson with specificity as required by Rule 9(b), all of Curtis' Counterclaims must be dismissed.

### A.    Curtis Has Not Specifically Pled "Who, What, When, Where, and How" the Retailer Statements Were Made.

Curtis' allegations regarding the Retailer Statements are particularly lacking. As explained, to sufficiently plead claims sounding in fraud (as all of its Counterclaims do), Curtis must allege "who, what, when, where, and how" the fraud occurred.  *Vess*, 317 F.3d at 1106.  Thus, in *Erde v. Eastern Savings Bank, FSB*, the plaintiff sued the bank that issued his home mortgage for alleged predatory lending, asserting several claims including intentional misrepresentation, negligent misrepresentation, and fraudulent concealment.  No. 09-CV-2711-VBF, 2009 WL 10673329, at *3 (C.D. Cal. June 17, 2009).  This Court dismissed all three claims under Rule 9(b) because plaintiff had failed to allege key facts regarding the alleged false statements, including but not limited to "specifying Defendant's employees or agents who made the statements, their authority to speak on behalf of Defendant, when the statements were made, and why the statements are false."  *Id.*  (citing *Glen Holly Entm't*, 100 F. Supp. 2d at 1094-96 & n.2).

Here, regarding the Retailer Statements, Curtis has alleged the following:

> Epson [] **reached out** to Walmart and **at least one other major retailer**, and provided false information to those customers.  **Among other things**, Epson accused Curtis of misstating the lumen ratings for its projector products.  **On information and belief**, Epson's false, misleading and defamatory statements to Walmart and **at least one other retailer** were both **verbal** and **written**.  Epson also made unwarranted demands that Walmart and **at least one other retailer** cease selling Curtis's projector products.

1  Counterclaim, ¶ 91 (emphasis supplied).  These allegations fall woefully short of the
2  requirements of Rule 9(b).

3        First, Curtis has not alleged "who" made the Retailer Statements, failing (like
4  the plaintiff in *Erde*) to identify Epson's "employees or agents who made the
5  statements [or] their authority to speak on behalf of [Epson]." *Erde*, No. 09-CV-2711-
6  VBF, 2009 WL 10673329, at *3.  This is critical because a key rationale for the
7  heightened pleading standard of Rule 9(b) is to put the defendant on notice as to the
8  circumstances of the alleged fraud "so that the defendant can prepare an adequate
9  answer." *Deutsch*, 823 F.2d at 1365.  Without any information whatsoever regarding
10 who at Epson allegedly made the Retailer Statements, which Curtis itself
11 acknowledged is "part of a global conglomerate owned by Seiko Epson . . . [which is]
12 many times larger than Curtis," Counterclaim, ¶ 85, Epson cannot adequately
13 investigate and respond to the Counterclaims.

14       Curtis also does not specifically identify the other parties to whom the Retailer
15 Statements were allegedly made.  Curtis refers to "at least one other major retailer"—
16 that is wholly insufficient under Rule 9(b), as it fails to specifically identify (1) the
17 specific "major retailer" that Curtis presumably believes to have heard the Retailer
18 Statements, or (2) the total number of other retailers that also may have heard the
19 Retailer Statements.  Here again, the lack of specificity in regards to the parties that
20 allegedly heard the Retailer Statements precludes Epson from adequately investigating
21 and responding to the Counterclaims.

22       Nor has Curtis alleged "what" Retailer Statements were made.  To be sure,
23 Curtis takes issue with Epson's alleged relaying of the false lumens ratings to
24 Walmart and "at least one other major retailer."  Counterclaim, ¶ 91.  But Curtis does
25 not stop there, and qualifies the Retailer Statements as including lumens rating
26 information "[a]mong other things."  Clearly, Curtis' failure to identify the actual
27 substance of any additional allegedly false statements fails under Rule 9(b).  *Erde*, No.
28 09-CV-2711-VBF, 2009 WL 10673329, at *3 ("[A] pleader must identify . . . the

content of the alleged representation.") (quoting *Glen Holly Entm't*, 100 F. Supp. 2d at 1094).

Curtis also fails to allege "when" and "where" the Retailer Statements were allegedly made. *Vess*, 317 F.3d at 1106. Regarding "how" the Retailer Statements were made, Cutis alleges only that they were "both verbal and written." Counterclaim, ¶ 91. Based on this entirely vague allegation, Epson cannot discern whether the Retailer Statements allegedly made to Walmart were (1) verbal, (2) written, or (3) both, whether the Retailer Statements allegedly made to "at least one other major retailer" were (1) verbal, (2) written, or (3) both, whether the Retailer Statements allegedly made to Walmart were verbal but the Retailer Statements allegedly made to the other unidentified retailer were written, or vice versa, or whether both verbal and written Retailer Statements were allegedly made to Walmart and the unidentified other retailer. Indeed, Curtis' allegations with respect to the Retailer Statements are so bare that under Rule 9(b), all of Curtis' Counterclaims should be dismissed to the extent that they are based on the Retailer Statements.

### B. Curtis Has Not Specifically Pled How the Retailer Statements and Press Release Statements Are Fraudulent.

Ninth Circuit law is clear: "[w]hile statements of the time, place, and nature of the alleged fraudulent activities are sufficient, *mere conclusory allegations of fraud are insufficient.*" *Holt*, No. 11-CV-1047-DOC, 2012 WL 123025, at *2 (citations omitted) (emphasis supplied).

In *Herndon v. Science Applications International Corp*., the plaintiff sued her former employer for employment discrimination. No. 05-CV-2269-BEN, 2007 WL 2019653, at *4 (S.D. Cal. July 10, 2007). Herndon, a 62 year old female, alleged that the defendant " implemented an age-discriminatory Succession Planning Policy and that she was reviewed and subsequently terminated as part of this policy with her birth date available on the review form." *Id*. She also alleged that the defendant had excluded her from meetings, refused to approve a plan she had proposed for her

1   department, and failed to repair her computer. *Id.* The court held that the heightened

2   pleading standard of Rule 9(b) applied because Herndon's claims sounded in fraud,

3   but ultimately concluded that her allegations were not sufficiently particular to state a

4   claim under Rule 9(b) (or even Rule 12(b)(6)) and dismissed her complaint. *Id.* The

5   court explained that the allegations Herndon had made:

6               do not, however, allow the Court to make the inference that

7               Herndon was discharged as a result of employment

8               discrimination based on age. Specifically, she did not allege

9               that she was replaced by a younger person. She did not

10              identify other individuals in the protected age group that

11              were also discriminated. She did not allege that information

12              concerning her birth date on the review form was used in

13              some way to eliminate her. Without more, the Court is not

14              convinced that Herndon has 'nudged' her discrimination

15              claim 'across the line from conceivable to plausible' to

16              satisfy the more relaxed 8(a) pleading requirements, much

17              less the heightened 9(b) requirements.

18  *Id.* (citations omitted).

19          Similarly here, Curtis has made only "mere conclusory allegations" of fraud

20  which are insufficient under Rule 9(b) and Rule 12(b)(6). *See Holt*, No. 11-CV-1047-

21  DOC, 2012 WL 123025, at *2. Curtis only contends that Epson made the Retailer and

22  Press Release Statements as part of "a scheme" to "eliminate projectors sold at lower

23  price points from the marketplace and in an effort to gain back lost market share[.]"

24  Counterclaim, ¶ 90; *see also id.* ¶¶ 79, 94. It does not allege that Epson's testing of its

25  projectors according to the ANSI standard was fraudulent (or erroneous), and it does

26  not allege that Epson has made false claims against other manufacturers of lower-

27  priced projectors. To the contrary, Curtis concedes (which it must) that Epson's

28  previous lawsuit against iRULU was justified, given that it was successful therein.

**PLAINTIFF EPSON AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*See id.* ¶ 103 (noting that "Epson falsely and misleadingly" compared the instant case to the iRULU case although "[u]nlike the iRULU case, Curtis has ample scientific support for its lumens ratings as advertised"). Like in *Herndon*, without more, Curtis' conclusory statements that Epson's actions constitute fraud are insufficient, and its Counterclaims must be dismissed under Rule 9(b).

## II.    All of Curtis' Counterclaims Must Be Dismissed Under Rule 12(b)(6).

Even if this Court finds that Rule 9(b) does not apply to Curtis' Counterclaims (it does), Curtis' allegations are so bare that they fail even the relatively lower pleading standard of Rule 12(b)(6). Even taking Curtis' allegations as true, Curtis cannot make out a claim for any of its state law causes of action (Counts II-VII) because the Retailer and Press Release Statements on which each is premised are privileged under California law. *See* Cal. Civ. Code § 47(b). Curtis has also failed to allege key elements of each, requiring their dismissal. *See infra* Section II.A.1. Curtis' Lanham Act claim for commercial disparagement (Count I) must be dismissed as Curtis has already taken the position that lumens ratings are *not* material to the purchasing decision. *See infra* Section II.B. As such, even if Rule 9(b) is inapplicable, all of Curtis' Counterclaims must be dismissed.

### A.    Curtis' State Law Claims (Counts II-VII) Must Be Dismissed Because The Retailer and Press Release Statements Are Absolutely Privileged Under California Law.

Cal. Civ. Code § 47(b) provides (in relevant part) that:

A privileged publication or broadcast is one made:

(a) In the proper discharge of an official duty.

(b) In any

(1) legislative proceeding,

***(2) judicial proceeding,***

(3) in any other official proceeding authorized by law[.]

13

Cal. Civ. Code § 47(b) (emphasis supplied).  In order for communications to be privileged for purposes of Cal. Civ. Code § 47(b), they must be:  (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) have some connection or logical relation to the action.  *See Silberg v. Anderson,* 786 P.2d 365 (1990). The privilege is "absolute in nature, applying to *all* publications, irrespective of their maliciousness."  *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal.App.5th 95, 116 (2d Cal. App. Ct. 2017) (citations and internal quotation marks omitted) (emphasis in original).  "Although originally enacted with reference to defamation actions alone, the privilege has been extended to *any communication*, whether or not it is a publication, and to *all torts other than malicious prosecution*." *Id.* (internal citations and quotation marks omitted) (emphasis in original).  Further, "[a]ny doubt about whether the privilege applies is resolved in favor of applying it." *Id*. (citations and internal quotation marks omitted).  California courts routinely hold that § 47(b) "encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit." *Id.* (citations and internal quotation marks omitted).

Here, factors (1) through (3) are obviously satisfied:  (1) Epson made each of the alleged statements in a judicial proceeding (this one); (2) Epson is a litigant herein; and (3) Epson made the alleged statements to retailers and consumers to achieve the object of this litigation, namely, to remedy the false statements that Curtis has injected (and continues to inject) into the marketplace.

Regarding factor (4), even taking the allegations in the Counterclaim in the light most favorable to Curtis, it is clear that the Retailer and the Press Release Statements are privileged.  Every single alleged statement relates to Curtis' false advertising, which is the subject of this lawsuit.  For example, the Retailer Statements (that Curtis advertised false lumens ratings and that Walmart and other retailers should stop

selling its products, Counterclaim ¶ 91), are the basis of Epson's case against Curtis. The Press Release Statements are nothing more than an announcement by Epson of this litigation—in fact, the title of the Press Release is "***Epson Lawsuit Against Curtis International Ltd. and Technicolor SA*** Exposes RCA Brand Projector Models with Lumens Claims Exaggerated Up to 99 Percent." *Id.* ¶ 96 & Ex. A (emphasis supplied). As the Court can clearly see from the contents of the Press Release, every single statement therein reiterates Epson's claims in this case. *See id.* Factor (4) is therefore met as well.

California law is clear that the privilege provided for in § 47(b) applies to all state law tort claims (other than malicious prosecution). *See, e.g., Option Capital*, 18 Cal.App.5th at 116. Thus, because the Retailer Statements and Press Release Statements satisfy the criteria set forth in Cal. Civ. Code § 47(b), they are privileged, and all of Curtis' state law counterclaims (Counts II-VII) must be dismissed.

1. <u>Even If the State Law Counterclaims Are Not Privileged</u><br><u>(They Are), Counts II, IV, V, VI, and VII Nevertheless Fail.</u>

Even if this Court does not find all of the Retailer Statements and Press Release Statements to be privileged under Cal. Civ. Code § 47(b) (it should), Counts II, IV, V, VI, and VII of Curtis' state law claims nevertheless fail under Rule 12(b)(6).

***Count II: Intentional Interference***

Under California law, the tort of intentional interference with business relations or economic advantage has five elements:

  (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff;

  (2) the defendant's knowledge of the relationship;

  (3) intentional acts on the part of the defendant designed to disrupt the relationship;

  (4) actual disruption of the relationship; and

(5) economic harm to the plaintiff proximately caused by the

acts of the defendant.

*Korea Supply Co. v. Lockheed Martin Corp.,* 63 P.3d 937, 950 (2003) (citations omitted).

Curtis has failed to allege elements (4) and (5).  With respect to "actual disruption of the relationship," Curtis has not pled that Epson's alleged Retailer Statements actually disrupted its relationship with Walmart or the other unidentified retailer.  Of course, Curtis cannot plead actual disruption because no retailer has stopped carrying its products, as a result of Epson's alleged Retailer Statements or otherwise.  This dovetails with element (5), because Curtis also did not (and cannot) plead that any of Epson's actions proximately caused it to suffer economic damages.  To be clear, if in fact Curtis has lost projector sales, it is more likely that those lost sales are due to *its own false lumens ratings* rather than anything Epson did.  One need only look at the consumer reviews of Curtis' projectors to know that potential consumers are likely to be deterred from buying its products on that basis alone.  *See* Am. Compl. ¶ 28.  As such, Curtis' intentional interference claim (Count II) must be dismissed.

### Count IV:  Trade Libel / Disparagement

Trade libel differs from defamation in that it focuses on statements disparaging the quality of another's property, which causes pecuniary loss to the owner. *Leonardini v. Shell Oil Co*., 216 Cal.App.3d 547, 572 (Cal. App. Ct. 1989).  To constitute trade libel, a statement must be false.  *Id*.  The statement also must have been made with actual malice, which means with knowledge it was false or with reckless disregard for whether it was true or false. *Melaleuca, Inc. v. Clark*, 66 Cal.App.4th 1344, 1350 (1998).

Curtis' claim for trade libel fails.  First, the Retailer and Press Release Statements do not inherently disparage Curtis' products; rather, the Retailer and Press Release Statements are objective recitations of the results of Epson's independent

testing of Curtis' projectors.  If any "disparagement" can be inferred from the Retailer and Press Release Statements (which is dubious), that disparagement is in regards to *Curtis*, for falsely advertising the brightness of its projectors, not the projectors themselves.

Further, the Retailer and Press Release Statements (1) are not false, and (2) were not made with actual malice.  *See Leonardini*, 216 Cal.App.3d at 572.  As explained, Epson engaged Lumita, Inc. to conduct independent testing of Curtis' projectors, and (allegedly) publicized the results of that independent testing which showed the significantly lower lumens ratings.  Here again, even taking the allegations in the light most favorable to Curtis, if Epson communicated the actual results of the independent testing, including the standards against which the projectors were tested, those statements were not false.  To be sure, Curtis may disagree with the characterization of them or contest them, but the results are what they are, and Epson's alleged communication of them to retailers and consumers was not false, malicious, or fraudulent.

Finally, Curtis has not sufficiently alleged that it was Epson's alleged Retailer and Press Release Statements that have caused it harm, rather than its own gross inflation of its projectors' lumens ratings that disappointed consumers and caused them to write negative product reviews that would dissuade other consumers from buying Curtis projectors.  *See, e.g,* Am. Compl. ¶ 28.  Thus, Count IV for trade libel must also be dismissed.

### Count V:  Unlawful / Unfair Business Practices (Cal. Bus. & Prof. Code § 17200)

Cal. Bus. & Prof. Code § 17200 prohibits unlawful and unfair business practices.  However, California case law is clear that the conduct on which the alleged violation of § 17200 is based must have occurred in California.  For example, in *Norwest Mortgage, Inc. v. Superior Court*, the court held that § 17200 did not apply to non-resident class members who had purchased insurance out of state because § 17200 "contains no express declaration that it was designed or intended to regulate

claims of nonresidents arising from conduct occurring entirely outside of California." 72 Cal. App. 4th 214, 222-23 (1999).  In *Norwest Mortgage*, the court reached that conclusion despite the fact that the defendant was incorporated and did business in California.  72 Cal. App. 4th at 226.

Curtis' § 17200 claim fails for the same reason.  With respect to the alleged Retailer Statements, as explained *supra* Section I.A, Curtis' allegations regarding the "who, what, when, **where** and how" are entirely vague and do not allege where those statements were supposedly made.  Thus, even though Epson is a California corporation doing business in California, Curtis has failed to allege that the misconduct (at least in regards to the Retailer Statements)[5] occurred in California, which dooms its § 17200 claim as a matter of law.

### Count VII:[6]  Unfair Competition

Curtis' unfair competition claim is entirely inapposite to the facts of this case. The elements of a common law unfair competition claim are:  (1) a substantial investment of time, skill or money in developing certain property; (2) appropriation

---

[5] Curtis also does not specifically plead that the Press Release Statements occurred in California.  *See, e.g.*, Counterclaim, ¶ 96 ("Epson continued its smear campaign against Curtis by *issuing a press release on its company website . . . .*") (emphasis supplied).  However, to the extent that the Court considers the text of the Press Release (attached as Exhibit A to the Counterclaim), Epson concedes that Curtis has alleged that the Press Release Statements occurred in California.

[6] Count VI:  False Advertising (Cal. Bus. & Prof. Code § 17500) fails for the same reasons Curtis' Lanham Act claim fails.  *See Allergan USA, Inc. v. Prescribers Choice, Inc.,* 364 F. Supp. 3d 1089, 1108 (C.D. Cal. 2019) ("Claims under [§ 17500] are substantially congruent to those under the Lanham Act.") (citations omitted); *see infra* Section II.B.

and use of the property by another company at little or no cost; (3) the appropriation and use of the property was without the authorization or consent; and (4) injury by the appropriation and use by the other company. *See Coupons, Inc. v. Stottlemire*, 588 F. Supp. 2d 1069, 1075 (N.D. Cal. 2008) (citations omitted).   In California, "[t]he common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another. The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection. *See generally* 1 Callmann, Unfair Competition Trademarks & Monopolies (4th ed. 1981) §§ 2.01– 2.03; *see also Bank of the West v. Superior Court*, 833 P.2d 545, 551 (Ca. 1992) (explaining that the common law tort of unfair competition involves allegations of "'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market").   That is not at all what Curtis alleges to have happened here.   Epson clearly is not passing off its goods as Curtis', it is merely attempting to remedy the misperceptions regarding Curtis' lumen ratings that the same has injected into the market.   As such, Curtis has failed to state a claim for unfair competition.

>    **B.**    **Curtis' Lanham Act Claim Should Be Dismissed Under Rule 12(b)(6) Because It Has Not Alleged, and Must Be Estopped From Alleging, That the Retailer and/or Press Release Statements Are Material.**

Count I of Curtis' Counterclaim is for violation of the Lanham Act (15 U.S.C. § 1125(a)).   To state a claim for commercial disparagement under § 1125(a), Curtis must demonstrate that Epson:

>    (1)    made a false statement of fact in a commercial advertisement;
>
>    (2)    that actually deceived or had the tendency to deceive a substantial segment of its audience;

(3)     in a way that was material, i.e., likely to influence an audience member's purchasing decision;

(4)     that the defendant caused to enter interstate commerce; and

(5)     the plaintiff has or is likely to be injured as a result, either by direct diversion of sales or by a lessening of goodwill.

*See Allergan USA,* 364 F. Supp. 3d at 1108 (C.D. Cal. 2019) (citing *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997)).  To be actionable under § 1125(a), the disputed statement must be either (1) literally false or (2) literally true but likely to mislead consumers.  *See Southland Sod Farms*, 108 F.3d at 1139.

Under either theory, the "plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product." *San Diego County Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1052 (S.D. Cal. 2019) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 n.3 (2d Cir. 2007)) (internal quotation marks omitted).  As Epson has repeatedly explained, "[t]he lumen rating for a projector is one of the most important and immediately recognizable projector features for consumers, and one that necessarily impacts consumer choice."  Compl., ¶ 15; *id.* ¶ 56 (explaining that Curtis' false lumens ratings deceive consumers and that "[t]his deception is material in that it is likely to influence the purchasing decisions of Epson's customers").  In its Answer, Curtis denied that lumens ratings are material to consumers' purchasing decisions.  Counterclaim, ¶ 15 ("Denied."); *id.* ¶ 56 ("Denied."); *see also id.* ¶ 104 (suggesting that lumen ratings are not material to consumers as evidenced by the fact that "Epson's own published guide on 'How to Buy a New Projector' mentions nothing of lumen ratings").

Having taken this position, Curtis cannot simultaneously argue that Epson's alleged statements regarding Curtis' inflated lumens ratings are material.  The Ninth

Circuit recognizes the doctrine of judicial estoppel, which is "sometimes referred to as the doctrine of preclusion of inconsistent petitions." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (quoting *Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989)).  As such, judicial estoppel is "intended to protect against a litigant playing fast and loose with the courts."  *Id.* (internal citations and quotation marks omitted). According to the Ninth Circuit, "[j]udicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one."  *Id.* (citations omitted).

In light of its repeated denial that lumens ratings "necessarily impact consumer choice," "influence the purchasing decisions of [] customers," and are "used by consumers in the purchase process," Curtis cannot now argue that Epson's alleged statements regarding Curtis' inflated lumens are material.[7]  *See Russell*, 893 F.2d at 1037.  That is, Curtis cannot simultaneously take the position that lumens ratings are not material to a consumer's purchasing decision when defending against Epson's false advertising claim, but then turn around and assert that Curtis' lower lumens ratings would materially impact the consumer's purchasing decision.  This is exactly

---

[7] It appears that Curtis may be aware of this inconsistency, as there is no specific allegation regarding the materiality of the Press Release Statements in the Counterclaim.  The only reference to materiality is in regards to the Retailer Statements.  *See, e.g.*, Counterclaim, ¶ 111 ("Epson's false statements of fact and false accusatory statements were made and continue to be made in connection with commercial promotion of its own products to Walmart and at least one other major retailer, which are customers of both Epson and Curtis, *in a manner that is material to such retailers' decision to purchase* and sell Epson's projector products over those of Curtis.") (emphasis supplied).  To the extent that Curtis has not alleged that the Press

the type of "fast and loose" misconduct against which the doctrine of judicial estoppel is designed to protect. Because Curtis cannot allege the materiality element, its Lanham Act claim fails.

## CONCLUSION

For the foregoing reasons, Epson respectfully requests that this Court dismiss all of Curtis' Counterclaims (Counts I-VII).

K&L GATES LLP

Dated:  September 3, 2019        By:   */s/ Caitlin C. Blanche*
_____
Caitlin C. Blanche
Morgan T. Nickerson
Jeffrey S. Patterson

Attorneys for Plaintiff / Defendant-in-Counterclaim Epson America, Inc.

**PLAINTIFF EPSON AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**