1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Attorneys for Defendant
Curtis International Ltd.

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| EPSON AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS INTERNATIONAL LTD., and TECHNICOLOR SA,<br><br>Defendants. | Case No. 8:19-cv-01469-DOC-ADS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT CURTIS INTERNATIONAL LTD. In OPPOSITION TO PLAINTIFF EPSON AMERICA, INC.'S MOTION TO DISMISS**<br><br>Date:    November 25, 2019<br>Time:    8:30 a.m.<br>Location:  Courtroom 9D<br><br>Hon. David O. Carter |

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   FACTUAL BACKGROUND ..................................................................... 2

    A.    Curtis and its Products ................................................................. 2

    B.    Epson and its Scheme to Disrupt Curtis' Business............................ 2

        1.    Epson's April 10 Letter to Walmart. ...................................... 2

        2.    Epson's False Press Release to the General Public ................... 3

    C.    The Procedural History of this Lawsuit ....................................... 6

III.  LEGAL STANDARDS .......................................................................... 7

    A.    FED. R. CIV. P. 8 ........................................................................ 7

    B.    FED. R. CIV. P. 9 ........................................................................ 7

    C.    FED. R. CIV. P. 12(b)(6) ............................................................. 7

III.  LEGAL ANALYSIS .............................................................................. 8

    A.    Curtis' Amended Counterclaims Satisfy FED. R. CIV. P. 8................ 8

    B.    Curtis' Amended Counterclaims Satisfy FED. R. CIV. P. 9(b)............ 9

    C.    Curtis' Amended Counterclaims Satisfy FED. R. CIV. P. 12(b)(6)
         .............................................................................. 12

        1.    Curtis States Claims for False Advertising in Counts I,
            VI. ................................................................................ 12

        2.    Curtis States a Claim for Intentional Interference with
            Business Relations and Economic Advantage in Count II...... 15

        3.    Curtis States a Claim for Defamation in Count III................. 17

        4.    Curtis States a Claim for Trade Libel in Count IV................. 20

    D.    Section 47(b)'s Litigation Privilege Does Not Apply to Epson's
        April 10 Letter or False Press Release ............................... 23

V.    CONCLUSION ................................................................................. 25

1
2

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Alpha GRP, Inc. v. Subaru of America, Inc.*,
   2018 WL 5986989 (C.D. Cal., June 8, 2018) ................................................. 9, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 7

*Bobbleheads.com, LLC v. Wright Bros., Inc.*,
   259 F. Supp. 3d 1087 (S.D. Cal. 2017) ........................................................... 9, 10

*Creatively Disruptive, LLC v. Nat'l Incorporation Network, Inc.*,
   2018 WL 4897212 (S.D. Cal., Oct. 5, 2018) ................................................... 19, 20

*Curtis v. Shinsachi Pharm. Inc.*,
   45 F. Supp. 3d 1190 (C.D. Cal. 2014) ................................................................ 17

*Deerpoint Group, Inc. v. Agrigenix, LLC*,
   393 F. Supp. 3d 968 (S.D. Cal. 2019) ................................................................ 16

*Dickinson v. Cosby*,
   17 Cal. App. 5th 655 (2017) ........................................................................... 24, 25

*Ducre v. Veolia Transportation*,
   2010 WL 11549862 (C.D. Cal., June 14, 2010) .................................................. 7

*Edwards v. Centex Real Estate Corp.*,
   53 Cal. App. 4th 15 (1997) ................................................................................. 24

*GetFugu, Inc. v. Patton Boggs LLP*,
   220 Cal. App. 4th 141 (2013) ............................................................................. 24

*Goldline, LLC v. Regal Assets, LLC*,
   2015 WL 1809301 (C.D. Cal., April 21, 2015) ......................................... 20, 21, 22

27
28

ii

*G.U.E. Tech., LLC v. Panasonic Avionics Corp.*.
2015 WL 12696203 (C.D. Cal., Sept. 15, 2015)..........................................21, 22

*Herndon v. Science Application Int'l Corp.*,
2007 WL 2019653 (S.D. Cal., July 10, 2007)....................................................11

*Kabbash v. Jewelry Channel, Inc. USA*,
2015 WL 6690236 (C.D. Cal., Nov. 2, 2015)................................................8, 11

*KM Strategic Mgmt., LLC v. Amer. Cas. Co. of Reading PA*,
156 F. Supp. 3d 1154 (C.D. Cal. 2015)................................................................17

*Korea Supply Co. Lockheed Martin Corp.*,
63 P. 3d 937 (2003) ............................................................................................17

*Leonardini v. Shell Oil Co.*,
216 Cal. App. 3d 547 (1989).........................................................................21, 22

*Logisticare Solutions, LLC v. California Med. Transp. Assoc., Inc.*,
2018 WL 5099663 (C.D. Cal., May 21, 2018)....................................................24

*Newcal Indus., Inc. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008).....................................................................12, 13

*North Star Media, LLC v. Winogradsky-Sobel*,
2011 WL 13220157 (C.D. Cal., May 23, 2011).......................................20, 21, 22

*Oei v N. Star Capital Acquisitions,  LLC*,
486 F. Supp. 2d 1089 (C.D. Cal. 2006) ............................................................23

*Pipe Restoration Technologies, LLC v. Coast Building & Plumbing,
Inc.*,
2018 WL 6012219 (C.D. Cal., Nov. 16, 2018)............................................14, 15

*SDI/ACCI v. AT&T Corp.*,
522 F.3d 955 (9th Cir. 2008).............................................................................19

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997)...........................................................................14

iii

*Spindler v. City of Los Angeles*,
　2018 WL 6164796 (C.D. Cal., Oct. 2, 2018) ...................................................... 24

*Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*,
　2016 WL 10611186 (C.D. Cal., Nov. 23, 2016) ................................................ 13

*Swartz v. KPMG LLP*,
　476 F.3d 765 (9th Cir. 2007) .................................................................................. 9

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003) ................................................................................ 8

*Vestis, LLC v. Caramel Sales, Ltd.*,
　2019 WL 3312212 (C.D. Cal., April 30, 2019) ........................................... 16, 17

*Vinci v. Hyundai Motor Amer.*,
　2018 WL 6136828 (C.D. Cal., April 10, 2018) ............................................... 10

**Statutes**

CAL. BUS. & PROF. CODE. §§ 17200 *et seq.* ...................................................... 8, 25

CAL. BUS. & PROF. CODE. §§ 17500 *et seq.* ............................................................ 12

CAL. CIV. CODE § 45(a) ...................................................................................... 19, 20

CAL. CIV. CODE § 47(b) ........................................................................................*passim*

CAL. CIV. CODE § 48(d) ............................................................................................ 20

**Other Authorities**

FED. R. CIV. P. 8 ............................................................................................... 7, 8, 9

FED. R. CIV. P. 9 ....................................................................................................*passim*

FED. R. CIV. P. 12 ..................................................................................................*passim*

# I.   PRELIMINARY STATEMENT

Seeking to capture lost market share, Epson embarked on a scheme to rid its competitors from the marketplace by besmirching them with public accusations of false advertising and selling allegedly inferior products.

Epson knows that Walmart is Curtis' largest and most important customer. To further its scheme, Epson wrote an unsolicited letter to Walmart's E-Commerce Officer, accusing Curtis of advertising false lumens ratings for its RCA-brand projectors. Epson made this same accusation much more widely against Curtis in a press release to the general public. Put simply, the only false statements pertaining to this lawsuit are Epson's accusations and advertising about Curtis and its products. Indeed, Curtis' lumens ratings are, and have always been, accurate and supported by sound scientific testing. Curtis need not allow a larger competitor, like Epson, to bully it in order to create an artificial marketplace for its products. Accordingly, Curtis asserted counterclaims in this lawsuit, seeking redress for injuries caused by Epson's smear campaign.

Epson, in a transparent effort to avoid liability for its scheme, seeks to dismiss Curtis' amended counterclaims by relying on a host of technical niceties, *none* of which pass muster. For example, notwithstanding the fact that Curtis alleged the exact contents of *Epson's* false representations, as well as who made them, when they made them, how they made them, and how they are false, Epson purportedly needs more information to defend itself. As another example, Epson alleges that California's "litigation privilege" somehow immunizes its false representations. However, Epson conveniently ignores that it made its false representations to Walmart *seven months before* filing this lawsuit in South Carolina.

At bottom, having done it, Epson knows very well what it did to Curtis. The allegations in Curtis' Amended Counterclaims contain more than sufficient

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT CURTIS IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS; CASE NO. 8:19-CV-01469-DOC-ADS

information to remind Epson in case it "forgot." Accordingly, this Court should deny Epson's motion to dismiss to Curtis' Amended Counterclaims.

## II. FACTUAL BACKGROUND

### A. Curtis and its Products

Curtis is a Canadian corporation that manufactures and distributes value-priced consumer electronics and appliances. Dkt. No. 22 at ¶ 7 (the "Am. Cplt."); Dkt. No. 106 at ¶ 85 (the "Am. Counterclaims"). For over 25 years, Curtis has offered a wide range of the latest technologies in affordable home electronic products, including DVD systems, portable home stereos, portable DVD players, MP3 players and projector products. Am. Counterclaims at ¶ 85. One of Curtis' largest customers and retailers of its projector products is Walmart. *Id*. at ¶ 87. Curtis sells its projector products in Walmart brick-and-mortar locations, and online at Walmart.com. *Id*. Among other brands and models, Curtis sells an RCA-brand[1] RPJ116 projector at Walmart. *Id*. at ¶¶ 92-97.

### B. Epson and its Scheme to Disrupt Curtis' Business

Epson is a California-based subsidiary of Seiko Epson Corporation, which is a Japanese corporation. Am. Cplt. at ¶ 6; Am. Counterclaims at ¶ 86. Like Curtis, Epson sells its projector products in Walmart brick-and-mortar locations, and online at Walmart.com. Am. Counterclaims at ¶ 88. Epson is and has been well aware of Curtis's business relationship and contracts with Walmart and other retailers for many years. *Id*. at ¶ 90. Epson also is and has been well aware of the importance of Curtis's relationship with Walmart and other retailers to Curtis and its business. *Id*.

---

[1] Curtis has a license from Technicolor SA to use the "RCA" trademark in Canada and the United States for a variety of household and consumer-electronic devices. *See* Dkt. No. 97-1 at 4. Technicolor SA's motion to dismiss the Am. Cplt. pursuant to FED. R. CIV. P. 12(b)(2) is *sub judice*. *See* October 29, 2019 Scheduling Notice.

2

In an effort to eliminate projectors sold at lower price points from the marketplace and in an effort to gain back lost market share resulting from the decreasing prices of substitute products such as big screen televisions that directly compete with Epson's high-priced projectors, Epson set about on a scheme to interfere with the relationships between Curtis and its customers, including Walmart ("Epson's Scheme").  Am. Counterclaims at ¶ 91.

### 1. Epson's April 10 Letter to Walmart

As an example of Epson's Scheme, on April 10, 2018, Epson's Vice President of Consumer Sales and Marketing, Mike Isgrig, sent a letter to Walmart's E-Commerce Officer, Terrance Oliver, titled *False Lumens Ratings in Advertisements for Certain Brand Name Projectors*.  *See* Am. Counterclaims at ¶ 92; *see also* Dkt. No.106-1 at 1 (the "April 10 Letter").

In Exhibit A to the April 10 Letter, Epson identified several brands and models of home-theater projectors, which Epson described as "Brand Name Projectors."  Am. Counterclaims at ¶ 93; April 10 Letter at 1.  One of the Brand Name Projectors that Epson listed in Exhibit A to the April 10 Letter to Walmart was: "RCA."  April 10 Letter at 3.  Based on its own allegations, Epson is keenly aware that Curtis sells RCA-brand projectors.  *See also* Am. Cplt. at ¶ 23 (Epson alleging that Curtis "sell[s] projectors under various brand names, including, (but not limited to, 'RCA' []").  As stated, *supra*, Epson is also aware of the importance of Curtis' relationship with Walmart.

In the April 10 Letter, Epson stated to Walmart that Epson had:

> "[L]earned through independent, third-party testing that <u>the Brand Name Projectors sold through your platform do not emit anywhere near the number of lumens advertised […]</u>.  <u>Rather, the results of the third-party testing conclude that the Brand Name Projector's actual brightness is only at most 10% of the advertised lumens</u>.  Testing results for the Brand Name projectors are included in the summary reports attached hereto as <u>Exhibit C</u>."  (emphasis in original).

3

Am. Counterclaims at ¶ 94; April 10 Letter at 1-2.  However, the lumen ratings displayed on Curtis's projector products, including its RCA-brand projectors, are and at all times in the past have been accurate and supported by sound scientific testing.  Am. Counterclaims at ¶ 107.

Epson titled Exhibit C to the April 10 Letter: "*Summary Testing Results for False Lumens Rating Projectors*."  Am. Counterclaims at ¶ 95; April 10 Letter at 2. (emphasis added).  In Exhibit C-2 to the April 10 Letter, Epson listed the purported results from a third-party test of the lumens capability of Curtis' RPJ116 projector, as measured by "ISO."  April 10 Letter at 20.  Epson stated to Walmart in the April 10 Letter "[i]t is important to note that the standard in the industry for testing lumens is clearly outlined in ISO and IDMS standards."  Am. Counterclaims at ¶ 105; April 10 Letter at 2.  However, there is no single industry standard or any requirement that a particular standard is used (Am. Counterclaims at ¶ 137), and there is more than one way to measure a product's lumens capability.  *Id*. at ¶ 106.  For example, Curtis measured the lumen ratings for its projectors by measuring the LED lumen output of the LED bulbs at the core of its projectors much in the same way that horsepower is measured in automobile engines.  *Id*. at ¶ 139.

Epson concluded its April 10 Letter by stating to Walmart:

> "In order to remedy this <u>false advertising</u> and minimize the harm to consumers, and as a major and strategic partner of Walmart's in projection and other categories, <u>Epson seeks</u> your cooperation in <u>removing all violating product listings for the Brand Name Projectors from Walmart.com and in removing the Brand Name Projectors from Walmart stores</u>."

Am. Counterclaims at ¶ 98; April 10 Letter at 2.  (emphasis added).

## 2. Epson's False Press Release to the General Public

Epson's Scheme included more than its April 10 Letter to Walmart.  For example, to further Epson's Scheme, it issued a press release on its website on March

4

1  29, 2019 titled *Epson America Seeks to Protect Projector Market from False Lumens*
2  *Advertising* ("Epson's False Press Release").  Am. Counterclaims at ¶ 133.

3       The subtitle of Epson's False Press Release was: "*Epson Lawsuit Against*
4  *Curtis International Ltd. and Technicolor SA Exposes RCA Brand Projector Models*
5  *with Lumens Claims Exaggerated Up to 99 Percent*."  *Id*. at ¶ 135.  Epson also stated
6  in its False Press Release that Curtis' projectors sold under the RCA brand name and
7  other brand names "use false lumen claims" and that "these projectors typically emit
8  as little as 1% of the claimed lumens performance." *Id*. at ¶ 136.  However, as stated,
9  *supra*, the lumen ratings displayed on Curtis's projector products, including its
10 RCA-brand projectors, are and at all times in the past have been accurate and
11 supported by sound scientific testing.  *Id*. at ¶ 107.

12      Epson's False Press Release is riddled with additional false and misleading
13 statements about Curtis and Curtis' projector products.  *See generally* Am.
14 Counterclaims at ¶¶ 137-143.  For example, in Epson's False Press Release, it
15 included a chart that purports to compare Curtis's "Claimed Lumens" for seven
16 named models of Curtis' projector products against the "Actual Lumens Measured"
17 by testing that Epson purportedly conducted.  *Id*. at ¶ 138.  The chart conveys the
18 conclusion that the "Actual Lumens % of Specified" is a fraction of the lumen rating
19 advertised by Curtis, ranging between 1% and 6%.  *Id*.  However, Epson compared
20 Curtis's LED lumen ratings against what is known as the American National
21 Standards Institute ("ANSI") rating, which is not a required method of measuring
22 lumens and, instead, provides only a different method and measurement for lumens.
23 *Id*. at ¶¶ 140-41.

24      Epson's Scheme has, and continues to, disrupt Curtis' relationship with
25 Walmart and other retailers and cause Curtis economic harm.  For example, Epson's
26 Scheme has diminished Curtis' reputation, and caused it to suffer damages,
27 including lost sales, of at least $5 million dollars and counting.  *Id*. at 31, ¶ (n)i.

28

## C.     Procedural History of this Lawsuit

More than seven months after sending the April 10 Letter to Walmart, Epson commenced this lawsuit in the United States District Court for the District of South Carolina.  *See* Dkt. No. 1 (the "Original Complaint").  In the Original Complaint, Epson alleged that Curtis falsely advertised the lumens capabilities of the RPJ116 and RPJ129 projectors.  *See generally id*.

Nearly a year after sending the April 10 Letter to Walmart, Epson filed its Amended Complaint in this lawsuit, which: (i) added the RPJ136 projector, and (ii) added Technicolor SA as a defendant.  *See generally* Am. Cplt.  In the Am. Cplt., Epson alleges that Curtis and Technicolor SA falsely advertised the lumens capabilities of the RPJ116, 129, and 136 projectors.  On July 31, 2019, the district court in South Carolina granted the parties' joint motion to transfer this lawsuit to this Court.  *See* Dkt. No. 51.

On August 12, 2019, Curtis filed its Answer and Counterclaims (the "Original Counterclaims").  *See* Dkt. No. 80.  On September 3, 2019, Epson filed a motion to dismiss Curtis' Original Counterclaims (the "September 3 Motion").  *See* Dkt. No. 101.  On September 24, 2019, Curtis timely filed its Am. Counterclaims, which mooted Epson's September 3 Motion.  *See* Dkt. 119.  On October 23, 2019, Epson filed a motion to dismiss Curtis' Am. Counterclaims under FED. R. CIV. P. 9(b) and 12(b)(6), as well as CAL. CIV. CODE § 47(b).  *See* Dkt. No. 116 (the "Motion to Dismiss").  Epson noticed its Motion to Dismiss for November 25, 2019.  *See* Motion to Dismiss at 1.  Pursuant to L.R. 7-9, and L.R. 11-6, Curtis timely files this Opposition to Epson's Motion to Dismiss.

## III.   LEGAL STANDARDS

### A.   FED. R. CIV. P. 8

"A pleading that states a claim for relief must contain: […] a short and plain statement of the claim showing that the pleader is entitled to relief […]."  FED. R. CIV. P. 8(a)(2).

### B.   FED. R. CIV. P. 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

### C.   FED. R. CIV. P.  12(b)(6)

"Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: […] (6) failure to state a claim upon which relief can be granted […]." FED. R. CIV. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the short and plain statement required under Rule 8(a)(2) "must contain sufficient factual matter [that, when] accepted as true, [] 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  When determining facial plausibility, the court can "draw on its judicial experience and common sense." *Id.* at 679.

When passing on a Rule 12(b)(6) motion, "[t]he court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party." *Ducre v. Veolia*

7

*Transportation*, 2010 WL 11549862, *3 (C.D. Cal., June 14, 2010) The Court can also "consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice." *Kabbash v. Jewelry Channel, Inc. USA*, 2015 WL 6690236, *2 (C.D. Cal., Nov. 2, 2015)

## IV.   LEGAL ANALYSIS

### A.   Curtis' Amended Counterclaims Satisfy FED. R. CIV. P. 8

Epson argues that Curtis' Am. Counterclaims are subject to FED. R. CIV. P. 9(b)'s heightened pleading standard because they allegedly "sound in fraud." Dkt. No. 116 at 8-9 ("Opening Brief").

A claim "sounds" in fraud when a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

Here, Curtis does not allege that Epson's April 10 Letter or its False Press Release were part of a unified course of fraudulent conduct or otherwise designed to defraud anyone. *See generally* Am. Counterclaims; *see also Vess*, 317 F.3d at 1105 (explaining that "intent to defraud" is an "indispensable element of a fraud claim"). To be sure, "fraud" appears in Curtis' Am. Counterclaims only twice: in ¶ 178 in support of Curtis' prayer for punitive damages, and (ii) in ¶ 182 in support of the fraudulent prong of Curtis' claim under CAL. BUS. & PROF. CODE. §§ 17200 *et seq* (the "UCL").

Instead, Curtis alleges that Epson's April 10 Letter and its False Press Release were part of Epson's Scheme to generate more sales at the expense of its competitors, like Curtis. Accordingly, with the exception of Curtis' prayer for punitive damages, and its claim under the fraudulent prong of the UCL, the appropriate pleading standard for Curtis' Am. Counterclaims is FED. R. CIV. P. 8(a)(2), *not* FED. R. CIV. P. 9(b). *Accord Vess*, 317 F.3d at 1104. Notably, Epson's Opening Brief does not

8

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT CURTIS IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS; CASE NO. 8:19-CV-01469-DOC-ADS

1  address FED. R. CIV. P. 8(a)(2), thus conceding that Curtis' Amended Counterclaims
2  satisfy this pleading standard.

### B.    Curtis' Amended Counterclaims Satisfy FED. R. CIV. P. 9(b)

Whether this Court applies FED. R. CIV. P. 9(b) to all of Curtis' Am. Counterclaims or only to its prayer for punitive damages and the fraudulent prong of its UCL claim, Curtis has satisfied Rule 9(b), as demonstrated herein.

For allegations to satisfy FED. R. CIV. P. 9(b), they "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defendant against the charge and not just deny that they have done anything wrong." *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) (a case on which Epson relies; specific allegations of false statements satisfied Rule 9(b)).

Allegations are specific enough to give a defendant proper notice when they include the "who, what, when, where, and how'" of the representations at issue. *Alpha GRP, Inc. v. Subaru of America, Inc.*, 2018 WL 5986989, *12-13 (C.D. Cal., June 8, 2018) (denying Rule 9(b) motion to dismiss; allegations satisfy Rule 9(b) when they "include the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations'") (quoting *Swartz v. KPMG LLP*, 476 F.3d 765, 764 (9th Cir. 2007)).

Here, "Epson concedes that Curtis has adequately pled the 'who, what, when, where and how'" with respect to Epson's April 10 Letter. Opening Brief at 10, n. 5. Nonetheless, Epson "still believes" that Curtis' allegations concerning the April 10 Letter, and the False Press Release, "fail the heightened pleading requirement of Rule 9 insofar as Curtis has not adequately alleged how [the Letter and Press Release] were fraudulent." *Id*. Epson also argues that Curtis has failed to satisfy Rule 9(b) with respect to the "Other Retailer Statements." *See id*. at 10-11. Both of Epson's arguments fail. *See discussion infra*.

9

As Curtis alleged in its Am. Counterclaims, Epson represented to Walmart in the April 10 Letter that the "actual brightness [of Curtis' RCA-brand RPJ116] is only at most 10% of the advertised lumens." Am. Counterclaims at ¶ 94. Epson also represented to the general public in its False Press Release that Curtis' "projectors typically emit as little as 1% of the claimed lumens performance." *Id*. at ¶ 136. *However*, as Curtis alleged in its Am. Counterclaims, those representations were false because "[t]he lumen ratings displayed on Curtis's projector products are and at all times in the past have been accurate and supported by sound scientific testing […]." *Id*. at ¶ 107.

As Curtis also alleged in its Am. Counterclaims, Epson represented to Walmart in the April 10 Letter, and the general public in the False Press Release, that there is an "industry standard" for measuring lumens, and this standard allegedly shows that the lumens capabilities of Curtis' projectors is less than advertised. Am. Counterclaims at ¶¶ 105, 137. *However*, as Curtis alleged in its Am. Counterclaims, those representations were false because "[t]here is more than one way to measure a product's lumens capability." Am. Counterclaims at ¶ 106; *see also id*. at ¶ 137 (alleging "[i]n truth and in fact, there is no single industry standard or any requirement that a particular standard is used").

With these detailed allegations, Epson has more than enough notice to admit or deny the allegations in Curtis' Am. Counterclaims. *See Vinci v. Hyundai Motor Amer.*, 2018 WL 6136828, *12 (C.D. Cal., April 10, 2018) (specifying how and why the defendant's steering mechanism was allegedly defective; this Court holding "Plaintiffs have set forth an explanation as to why the omission complained of was false and misleading and thus state a claim under Rule 9(b)") (internal citations omitted); *compare Bobbleheads.com, LLC*, 259 F. Supp. 3d at 1095-96 (a case on which Epson relies, plaintiff satisfied Rule 9(b) by alleging "that Defendants advertised Defendant Work 2 in response to takedown notices, but actually shipped

10

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT CURTIS IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS; CASE NO. 8:19-CV-01469-DOC-ADS

Defendant Work 1 to customers"; the court holding "[t]his is enough to give Defendants fair notice of the alleged fraudulent conduct so that they can adequately defend against the charge") *with Herndon v. Science Application Int'l Corp.*, 2007 WL 2019653, *4 (S.D. Cal., July 10, 2007) (a case on which Epson relies; Rule 9(b) motion to dismiss granted because unlike here, the plaintiff "failed to identify the […] contents of the contracts," let alone specify how or why those contents were allegedly false or misleading).

Moreover, as Curtis alleges in paragraph 124 of its Am. Counterclaims, "Epson has made false, misleading, and defamatory statements to at least one of Curtis' other major retail customers about Curtis and Curtis' projector products that are and/or were the same as and/or similar to Epson's False, Misleading, and Defamatory April 10 Statements to Walmart." Am. Counterclaims at ¶ 124. Epson argues that the alleged lack of specificity in paragraph 124 "precludes Epson from adequately investigating and responding to the Amended Counterclaims." Opening Brief at 12. Epson's feigned ignorance about the "Other Retailer" is a red herring.

Curtis' allegations in paragraph 124 do not appear in a vacuum. Instead, as quoted, *supra*, Curtis ties these allegations directly to Epson's April 10 Letter. Epson concedes that Curtis pleaded the who, what, where, and when of Epson's April 10 Letter. And as discussed, *supra*, Curtis specifies how and why Epson's April 10 Letter was false and misleading. Armed with this bevy of information, Epson can admit or deny the allegations in paragraph 124 of Curtis' Am. Counterclaims concerning "Other Retailers." *See Alpha GRP, Inc.*, 2018 WL 5986989 at *13 (rejecting defendant's argument that plaintiff must plead identity of "unnamed Management Company" to satisfy Rule 9(b)); *see also Kabbash*, 2015 WL 6690236 at *6 (Rule 9(b) does not require pleading specifics of each instance of fraudulent conduct; denying motion to dismiss under Rule 9(b) even though

plaintiff did not identify the content of a single allegedly false and misleading "Estimated Retail Value").

Based on the foregoing, this Court should deny Epson's Motion to Dismiss Curtis' Amended Counterclaims under FED. R. CIV. P. 9(b).

## C. Curtis's Amended Counterclaims Satisfy FED. R. CIV. P. 12(b)(6)

Epson argues that this Court must also dismiss Curtis' Am. Counterclaims under FED. R. CIV. P. 12(b)(6). As demonstrated, herein, Epson is wrong.

### 1. Curtis States Claims for False Advertising in Counts I, VI

Epson contends that the elements of false-advertising claims under § 43(a)(1)(B) of the Lanham Act (Count I) and § 17500 (Count VI) are the same. *See* Opening Brief at 22, n. 9. Curtis agrees. As demonstrated, herein, Curtis states claims for false advertising under both statutes.

To state a § 43(a)(1)(B) claim, the plaintiff must allege:

> "'(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of statement, either by direct diversion of sale from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.'"

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (reversing dismissal of Section 43(a)(1)(B) claim under FED. R. CIV. P. 12(b)(6)).

Regarding the first element, Curtis specifically alleges the contents of Epson's representations in the April 10 Letter concerning Curtis' products, including, for example, that Epson represented: (i) the lumens' capabilities of Curtis' projectors "is at most only up to 10% of the advertised lumens" (Am. Counterclaims at ¶ 94), and (ii) that "ISO" is the "industry standard for testing lumens." *Id*. at ¶ 105. Curtis

also specifically alleges the contents of Epson's False Press Release that concern Curtis' products, including, for example, that Epson stated Curtis' "projectors typically emit as little as 1% of the claimed lumens performance." *Id.* at ¶ 136. These representations are questions of fact. For example, the actual brightness of Curtis' RPJ116 projector either is or is not only at most up to 10% of the advertised lumens claim. Likewise, Curtis' projectors either do or do not emit as little as 1% of the claimed lumens performance. Curtis also specifically alleges how and why these representations are false. *See discussion supra* at §§ II.B, IV.B.

Based on the foregoing, Curtis has satisfied the first element. *See Newcal Indus.*, 513 F.3d at 1053 ("[T]he question of whether IKON does or does not actually 'deliver 95% up-time service in their IKON Contracts'" is a "factual question," and because "[t]he complaint alleges that this statement was false when made, […] it survives 12(b)(6) scrutiny").

Regarding the second (and fifth) element, Curtis specifically alleges that Epson sent the April 10 Letter to Walmart, and distributed the False Press Release to the general public to further its Scheme of disrupting Curtis' business. *See* Am. Counterclaims at ¶¶ 91, 111, 116, and 121. Accordingly, Epson's April 10 Letter, and False Press Release, constitutes commercial advertisement or promotion in interstate commerce. *Accord Newcal Indus., Inc.*, 513 at 1054.

Regarding the third and fourth elements, not only are Epson's representations in the April 10 Letter, and Press Release, concerning Curtis' products false, but also they are literally false. "[A] false statement of fact is a literally false statement, either on its face or by implication, or a literally true statement that is likely to mislead or confuse consumers." *Strategic Partners, Inc. v. Vestagen Protective Techs. Inc.*, 2016 WL 10611186, *2 (C.D. Cal., Nov. 23, 2016) (denying motion to dismiss).

As discussed, *supra*, Curtis alleges in its Am. Counterclaims "[t]he lumen ratings displayed on Curtis's projector products are and at all times in the past have

been accurate and supported by sound scientific testing […].”  Am. Counterclaims at ¶ 107.  Accordingly, it is plausible that at least the following representations concerning the lumens’ capabilities of Curtis’ projectors are literally false on their face: (i) the lumens’ capabilities of Curtis’ projectors “is at most only up to 10% of the advertised lumens” (Epson’s April 10 Letter), and (ii) Curtis’ “projectors typically emit as little as 1% of the claimed lumens performance” (Epson’s False Press Release).

As also discussed, *supra*, Epson represented in the April 10 Letter to Walmart that “ISO” is “the industry standard for testing lumens.”  No source is cited to support the sweeping statement.  Epson then attached to its April 10 Letter a report that purportedly showed the ISO lumens output of Curtis’ RPJ116 projector to support its representation to Walmart that the actual brightness of projectors, such as Curtis’ RPJ116 projector, “is only at most up to 10% of the advertised lumens claims.”  Viewed in this context, it is plausible that Epson’s representation that ISO is “the industry standard for testing lumens” is literally false because it implies that the actual lumens output of Curtis’ projectors is less than advertised.  *See Pipe Restoration Technologies, LLC v. Coast Building & Plumbing, Inc.*, 2018 WL 6012219, *4 (C.D. Cal., Nov. 16, 2018) (“When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context.  Thus courts have held that a claim can be literally false by necessary implication”; plaintiff prevailed on Section 43(a)(1)(B) claim) (internal citations omitted); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140-45 (9th Cir. 1997) (a case on which Epson relies; reversing summary judgment in defendant’s favor because district court failed to evaluate literal falsity in context).

Moreover, because Curtis has plausibly alleged that the representations discussed, *supra*, are literally false, those representations are presumptively deceptive (element three) and material (element four).  *See Pipe Restoration*

*Technologies, LLC*, 2018 WL 6012219 at *4 ("When an advertisement is literally false, a presumption [of deception] arise"; "[i]f a statement is literally false, materiality may be presumed").

Nonetheless, Epson argues that Curtis cannot establish materiality because Curtis' Answer to the Am. Cplt. contains a denial that lumens ratings are material to consumers' purchasing decisions. *See* Opening Brief at 23-5. This Court should reject Epson's argument for at least two reasons. First, as stated, *supra*, a presumption of materiality exists with respect to Epson's April 10 Letter and False Press Release. Second, Epson's argument fails to appreciate that its Am. Cplt. and April 10 Letter concern different audiences. The former concerns consumers shopping in a retailing setting; the latter concerns a single E-Commerce Officer for one of the world's largest companies. It is plausible that materiality differs amongst these disparate audiences—and Curtis' positions on materiality are consistent with these differences.

Finally, Curtis alleges that it has suffered harm in the form of lost profits and diminished goodwill. Accepting these allegations as true, which the Court must do, Curtis has satisfied the sixth element of its claim.

Based on the foregoing, this Court should reject Epson's Motion to Dismiss Counts I and VI under Fed. R. Civ. P. 12(b)(6).

**2. Curtis States a Claim for Intentional Interference with Business Relations and Economic Advantage in Count II**

A claim for intentional interference with prospective economic advantage has five elements, namely:"(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship[2]; (4) actual disruption of the

---

[2] The third element also requires "conduct that was wrongful by some legal measure other than the fact of interference itself." *Vestis, LLC*, 2019 WL 2019 WL 3312212

15

relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *See Vestis, LLC v. Caramel Sales, Ltd.*, 2019 WL 3312212, *10-11 (C.D. Cal., April 30, 2019) (holding "Counterclaimants have sufficiently pleaded the elements of intentional interference with prospective economic advantage").

Here, Curtis states a claim for intentional interference with business relations.

As a preliminary matter, Epson does not challenge the sufficiency of Curtis' allegations with respect to first, second, or third elements. *See generally* Opening Brief. Nor could Epson do so. Curtis specifically alleges: (i) the nature of its relationship with Walmart (Am. Counterclaims at ¶¶ 87, 90); (ii) that Epson was aware of Curtis' relationship with Walmart (*id*. at ¶¶ 90, 110, 115, and 120); and that Epson acted intentionally when publishing its April 10 Letter to Walmart, and False Press Release. *Id*. at ¶¶ 111, 116, and 121. Instead, Epson challenges the sufficiency of Curtis' allegations with respect to the fourth and fifth elements.

Regarding the fourth element, Epson argues "Curtis has not pled that Epson's [April 10 Letter] actually disrupted its relationship with Walmart or the other unidentified retailer." Opening Brief at 18. Regarding the fifth element, Epson argues "Curtis also did not (and cannot) plead that any of Epson's actions proximately caused it to suffer economic damages." *Id*.

Contrary to Epson's arguments, Curtis specifically alleges in its Amended Counterclaims that it has "suffered and will continue to economic harm and injury to its commercial interests, including losses in sales, which have been and are being proximately caused by Epson's actions […]." Am. Counterclaims at ¶ 155; *see also id*. at ¶¶ 112, 117, 122 (*accord* as to all).

---

at *10. Epson does not mention this requirement. *See generally* Opening Brief. Nonetheless, Epson's April 10 Letter, and False Press Release, constitute, *inter alia*, defamation and trade libel under California law. *See discussion infra*. Accordingly, Curtis has satisfied this additional prong of the third element. *See Deerpoint Group, Inc. v. Agrigenix, LLC*, 393 F. Supp. 3d 968, 987 (S.D. Cal. 2019) ("Acts of defamation or disparagement are sufficiently independently wrongful to meet the third element of an IIPEA claim").

Accepting as true Curtis' allegation that Epson's Scheme has disrupted Curtis' business and caused it to suffer lost sales, which this Court must do, Curtis has stated a claim for intentional interference with prospective economic advantage.  *See, e.g.*, *Vestis, LLC*, 2019 WL 3312212 at *10-11 (holding "Counterclaimants have sufficiently pleaded the elements of intentional interference with prospective economic advantage" by alleging, *inter alia*, that their business was disturbed and they suffered damages in the form of lost profits); *see also Curtis v. Shinsachi Pharm. Inc.*, 45 F. Supp. 3d 1190, 1202 (C.D. Cal. 2014) (plaintiff stated a plausible claim for intentional interference with prospective economic advantage by alleging, *inter alia*, lost sales); *Korea Supply Co. Lockheed Martin Corp.*, 63 P. 3d 937, 958 (2003) (a case on which Epson relies; the California Supreme Court held that the plaintiff stated a plausible claim by alleging, *inter alia*, disruption and harm in the form of lost commissions).

Based on the foregoing, this Court should deny Epson's Motion to Dismiss Count II of Curtis' Amended Counterclaims under FED. R. CIV. P. 12(b)(6).

### 3.  Curtis States a Claim for Defamation in Count III

Significantly, Epson does not mention its False Press Release when seeking dismissal of Count III.  *See generally* Opening Brief at 18-20; *see also id.* at 20 (Epson arguing only "any claim for defamation based on the Retailer Statements necessarily fails").  Accordingly, Epson concedes that Curtis has stated a claim for defamation in Count III with respect to Epson's False Press Release.  Curtis also states a claim for defamation with respect to Epson's April 10 Letter. *See discussion infra*.

A defamation claim includes "the following elements: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injury or causes special damage." *KM Strategic Mgmt., LLC v. Amer. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1166-67 (C.D. Cal. 2015) (Defamation claim stated).

17

1        Regarding the first element, a statement is "published" when it: (i) is "made

2   to at least one person other than the defamed," and (ii) "specifically refer[s] to or

3   concern[s] the defamed plaintiff in some way." *Id.*

4        Here, Epson does not dispute that it sent the April 10 Letter to Walmart (*i.e.*,

5   at least one person other than Curtis). *See generally* Opening Brief. Instead, Epson

6   argues that Curtis cannot satisfy the first element of a defamation claim because

7   "Curtis is not mentioned at all in the April 10 Letter or its exhibits." Opening Brief

8   at 20. Yet, Epson *admits* that its April 10 Letter "directly refer[s] to Curtis' [alleged]

9   false advertising, which is the subject of this lawsuit." *Id.* at 16. Epson cannot have

10   it both ways. If Epson's April 10 Letter does not mention Curtis or its alleged false

11   advertising – *i.e.*, "the subject of this [litigation]" – then Epson's argument

12   concerning § 47(b)'s litigation privilege fails. *See discussion infra* at § IV.D. If

13   Epson's April 10 Letter "directly refer[s] to Curtis," then Epson's argument

14   concerning Curtis' alleged failure to satisfy the first element of a defamation claim

15   likewise fails.

16        Ostensibly recognizing the paradox created by these contradictory positions,

17   Epson argues "there is [also] no reason whatsoever that inclusion of a single 'RCA'

18   brand projector on the list of fifteen other projectors could be reasonably interpreted

19   to implicate Curtis." *Id.* Epson is wrong.

20        Epson alleges in its own Am. Cplt. that Curtis sells "projectors under various

21   brand names, including, but not limited to, "'RCA' […]." Am. Cplt. at ¶ 23. With

22   this allegation, Epson concedes that there is an association between Curtis and the

23   RCA brand. As Curtis alleges, Epson also sent its April 10 Letter to Walmart's *E-*

24   *Commerce* Officer (Am. Counterclaims at ¶ 92) – an individual who is presumably

25   familiar not only with the brands that Walmart sells, but also with the sources of

26   those brands, such as Curtis and the RCA brand. These allegations render it

27   plausible that, when Walmart's E-Commerce Officer saw "RCA" on Exhibits A and

28

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT CURTIS IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS; CASE NO. 8:19-CV-01469-DOC-ADS

C-2 to the April 10 Letter, he reasonably understood "RCA" to implicate Curtis. *Compare with SDI/ACCI v. AT&T Corp.*, 522 F.3d 955, 960 (9th Cir. 2008) (A *non-*12(b)(6) case on which Epson relies; no *evidence* of third parties understanding references to the plaintiffs' company in allegedly defamatory statements-at-issue "as referring to the [plaintiffs] by implication").

Based on the foregoing, Curtis has satisfied the first element of its defamation claims, and Epson's arguments to the contrary are meritless.

Regarding the second element of Curtis' defamation claim – falsity – as discussed, *supra*, Curtis' allegations render it plausible that the representations in Epson's April 10 Letter to Walmart were literally false.

Regarding the third element – a defamatory publication – as Curtis alleges in its Am. Counterclaims, Epson unambiguously represented to Walmart's E-Commerce Officer in the April 10 Letter that Curtis' projector product, *inter alia*, did "not emit anywhere near the number of lumens as advertised" and, instead, its "actual brightness is only at most up to 10% of the advertised lumens claims." April 10 Letter at 2.  Walmart's *E-Commerce* Officer did not need any additional information to know that, with this representation (among others), Epson was accusing Curtis of falsely advertising the lumens' capabilities of its allegedly inferior products.  Accordingly, Curtis' Am. Counterclaims render it plausible that the representations in Epson's April 10 Letter are libelous *per se* and, thus, defamatory. *See* CAL. CIV. CODE § 45(a) ("A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face"); *see also Creatively Disruptive, LLC v. Nat'l Incorporation Network, Inc.*, 2018 WL 4897212, *5 (S.D. Cal., Oct. 5, 2018) (explaining that Plaintiff plausibly alleged libel *per se* by specifying contents of defendant's statements that impugned plaintiff's business performance and

reputation; "[a] corporation can be libeled by statements which injure its business reputation").

Regarding the fourth element – an unprivileged publication – Epson's April 10 Letter (and False Press Release) is unprivileged.  *See discussion infra* at § IV.D.

Regarding the fifth element – injury and/or special damages – because Curtis' Am. Counterclaims render it plausible that the representations in Epson's April 10 Letter are libelous *per se*, Curtis does not have to allege special damages; "rather, damage to [Curtis'] reputation is presumed." *Creatively Disruptive, LLC*, 2018 WL 4897212 at *5 ("If a plaintiff adequately alleges and proves a libel per se, there is no need to prove special damages; rather, damage to the plaintiff's reputation is presumed"); *accord* CAL. CIV. CODE § 45(a).  Nonetheless, Curtis plausibly alleges special damages attributable to Epson's April 10 Letter (and False Press Release) of "at least $5 million dollars at this time and growing."  Am. Counterclaims at 31, ¶ (n)i; *see also* CAL. CIV. CODE § 48(d)(2) ("'Special damages' means all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation […]").

Based on the foregoing, this Court should deny Epson's Motion to Dismiss Count III of Curtis' Amended Counterclaims under FED. R. CIV. P. 12(b)(6).

### 4.  Curtis States a Claim for Trade Libel in Count IV

Trade libel is "the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner." *Goldline, LLC v. Regal Assets, LLC*, 2015 WL 1809301, *5 (C.D. Cal., April 21, 2015 (finding that plaintiff stated plausible trade libel claim); *accord North Star Media, LLC v. Winogradsky-Sobel*, 2011 WL 13220157, *11 (C.D. Cal., May 23, 2011).

To state a trade libel a claim, a party "must allege: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages." *Goldline, LLC*,

1   2015 WL 1809301 at *5; *see also North Star Media, LLC*, 2011 WL 13220157 at

2   *11 (*same*); *G.U.E. Tech., LLC v. Panasonic Avionics Corp.*, 2015 WL 12696203,

3   *4 (C.D. Cal., Sept. 15, 2015) (*same*; plaintiff stated trade libel claim).  A trade libel

4   claim also "requires the intentional publication of a false and unprivileged statement

5   of fact." *Goldline, LLC*, 2015 WL 1809301 at *5.  Curtis satisfies each element.

6   Regarding the first element, as discussed, *supra*, Curtis plausibly alleges that

7   the representations in Epson's April 10 Letter and False Press Release constitute

8   false publications.  Epson's false publications of fact are also unprivileged.  *See*

9   *discussion infra* at § IV.D; *compare with Leonardini v. Shell Oil Co.*, 216 Cal. App.

10  3d 547, 574 (1989) (a case on which Epson relies; Shell failed to state a trade libel

11  claim because unlike Epson's representations, the defendant's representations were

12  privileged).  As Curtis alleges in its Amended Counterclaims, the representations in

13  Epson's April 10 Letter, and False Press Release, were false statements of fact

14  because, *inter alia*, they expressly represented that the lumens' capabilities of Curtis'

15  projectors were below what Curtis advertised; however, Curtis' lumens ratings are

16  accurate.  *See discussion supra*.

17  Regarding the second element – inducement – as Curtis alleges in its Am.

18  Counterclaims, Epson published its April 10 Letter, and False Press Release, in

19  furtherance of Epson's Scheme to induce Walmart – which Epson knows "is Curtis's

20  largest customer for its projector products" (Am. Counterclaims at ¶ 110) – to do

21  more business with Epson instead of other retailers, including Curtis.  *See* Am.

22  Counterclaims at ¶¶ 91, 111, 116, and 121.  And Epson's Scheme worked.  As Curtis

23  alleges in its Amended Counterclaims, it has suffered economic harm to the tune of

24  "at least $5 million dollars at this time and growing" because of Epson's Scheme.

25  Am. Counterclaims at 31, ¶ (n)i.  Accordingly, Curtis also satisfied the third element,

26  special damages.  *Compare with Leonardini*, 216 Cal. App. at 573 (a case on which

27

28

Epson relies; Shell failed to state a trade libel claim because unlike Curtis, it "neither alleged nor sought pecuniary damages" attributable to the defendant's conduct).

Based on the foregoing, Curtis has stated a trade libel claim. *See Goldline, LLC*, 2015 WL 1809301 at *5 (plaintiff stated trade libel claim by alleging "Defendants intentionally published false statements" concerning plaintiff's business while "knowing that publication would be harmful to plaintiff's business, and cause diversion of its sales and harm to its interests"); *see also G.U.E. Tech, LLC*, 2015 WL 12696203 at *5 (plaintiff stated trade libel claim where, *inter alia*, it gave "reasonably specific estimates of the damages allegedly stemming from the trade libel"); *accord North Star Media, LLC*, 2011 WL 13220157 at *11.

Notwithstanding the foregoing, Epson alleges that Curtis has failed to state a trade libel claim for four reasons--*all* of which this Court should reject.

*First*, Epson argues that its April 10 Letter and False Press Release, "do not inherently disparage Curtis' products." Opening Brief at 21. Nothing could be further from the truth. Put simply, charging a competitor with falsely advertising its products' attributes is disparaging.

*Second*, Epson argues that its April 10 Letter, and its False Press Release, "are not false." Opening Brief at 21. Epson's *ipse dixit* conclusion of law fails to appreciate that its Motion to Dismiss concerns whether Curtis has sufficiently pleaded falsity, not proven falsity. More to the point, though, as discussed, *passim*, Curtis' pleads numerous factual allegations that, when taken as true, render it plausible that the representations in Epson's April 10 Letter, and False Press Release, were literally false.

*Third*, Epson argues "there are no facts alleged to show that" Epson published its April 10 Letter or its False Press Release "with actual malice." Opening Brief at 21. Epson is wrong, and also ignores that the Federal Rules only required that malice be averred generally. FED. R. CIV. P. 9(b); *Greenwich Ins. Co. v. Rodgers*, 729 F.

22

1    Supp. 2d. 1158, 1164 (C.D. Cal. 2010) ("Defendant has alleged malice generally.

2    That is all that is required under federal pleading standards."). Epson concedes that

3    "actual malice [] means with knowledge it was false or with reckless disregard for

4    whether it was true or false." *Id*. at 20.  Yet, Epson conveniently overlooks that

5    Curtis alleged actual malice in its Am. Counterclaims (at ¶ 167)—*and* pleaded

6    supporting factual allegations about how Epson acted with actual malice, *i.e.*: Epson

7    charged Curtis with falsely advertising lumens ratings based on a putative "industry

8    standard" when, in fact, Epson knows and/or reasonably should have known that no

9    such industry standard exists. *See* Am. Counterclaims at ¶¶ 104-08.  Curtis has more

10   than satisfied the pleading standard for malice under the Federal Rules.

11       *Fourth*, Epson argues "Curtis has not sufficiently alleged that it was Epson's

12   alleged Retailer and Press Release Statements that have caused it harm […]."

13   Opening Brief at 21.  Epson is, again, wrong; Curtis sufficiently pleaded reputational

14   harm and special damages. *See discussion supra*.

15       Based on the foregoing, this Court should deny Epson's Motion to Dismiss

16   Count IV of Curtis' Amended Counterclaims under Fed. R. Civ. P. 12(b)(6).

17       **D.   Section 47(b)'s Litigation Privilege Does Not Apply to Epson's**
18       **April 10 Letter or False Press Release**

19       Epson argues that this Court should also dismiss Counts II-VI of Curtis' Am.

20   Counterclaims because Epson's April 10 Letter, and False Press Release, are

21   allegedly non-actionable under § 47(b) of California's Civil Code.[3]  Epson is wrong.

22       Here, Epson issued its False Press Release on its website for the general public

23   to view. *See* Am. Counterclaims at ¶ 134 ("Epson distributed the False Press Release

24   to the public at large").  Put simply, issuing a press release to the public on a website

25

26   [3] Epson does not argue that § 47(b) warrants dismissal of Curtis' Section 43(a)(1)B)
     claim under the Lanham Act in Count I.  *See generally* Opening Brief.  Nor could
27   Epson do so.  "[I]t is [] well settled that the California litigation privilege does not
     apply to federal causes of action […]." *Oei v N. Star Capital Acquisitions,  LLC*,
28   486 F. Supp. 2d 1089, 1098 (C.D. Cal. 2006).

is a far cry from making a statement in a judicial proceeding.  Accordingly, § 47(b)'s litigation privilege does not apply to Epson's False Press Release.  *See Spindler v. City of Los Angeles*, 2018 WL 6164796, \*16 (C.D. Cal., Oct. 2, 2018) (explaining that §47(b)'s "litigation privilege has no application to statements made to the press, the media or similar third parties" ((citing *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 681 n. 11 (2017) ("The litigation privilege does not extend to press releases")); *see also GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 153-54 (2013) ("[L]itigation privilege should not be extended to 'litigating in the press'").

Section 47(b)'s litigation privilege also does not apply to Epson's April 10 Letter.  *See discussion infra*. For § 47(b)'s litigation privilege to apply, a communication must be: "(1) made in judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Spindler*, 2018 WL 6164796 at \*16 (referencing CAL. CIV. CODE § 47(b)).  "The critical point of each of these four elements is that the mere potential or 'bare possibility' that judicial proceedings 'might be instituted' in the future is insufficient to invoke the litigation privilege."  *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 36-8 (1997) (holding no litigation privilege).  Accordingly, litigation privilege applies to pre-litigation statements only if they are made "'in connection with proposed litigation contemplated in good faith and under serious consideration.'"  *Logisticare Solutions, LLC v. California Med. Transp. Assoc., Inc.*, 2018 WL 5099663, \*9 (C.D. Cal., May 21, 2018) (no litigation privilege) (quoting *Dickinson*, 17 Cal. App. 5th at 672).

Here, Epson argues that § 47(b)'s litigation privilege immunizes its April 10 Letter to Walmart because the Statements in the Letter were "clearly connected to this litigation"; "were made with the express purpose of remedying the harm to Epson that this lawsuit would soon seek to achieve"; and "directly refer to Curtis' false advertising, which is the subject of this lawsuit."  Opening Brief at 16.

24

1
2
3
4
5
6
7
8
9
10
11

Epson cannot stretch the litigation privilege so far to sweep up extra-judicial communications made more than six months prior to the filing of a lawsuit.  If Epson was giving "serious consideration" to filing an "imminent" lawsuit against Curtis as of its April 10, 2018 Letter to Walmart – and already had "evidence" that Curtis' lumens ratings were allegedly false as of April 10, 2018 – then it begs the question: *why did Epson wait seven more months to file this lawsuit against Curtis in South Carolina*?  What is more, why is the lawsuit not even mentioned in the April 10 Letter? The, answer, of course, is that Epson sent the April 10 Letter to Walmart hoping that it would result in Walmart clearing shelf space for Epson's products at the expense of other companies, like Curtis, not in imminent anticipation of litigation.

12
13
14
15
16
17

At the very least, Epson's seven-month delay creates an issue of fact about whether Epson was seriously considering filing an imminent lawsuit against Curtis when it sent the April 10 Letter to Walmart.  *See Dickinson*, 17 Cal. App. 5th at 683 ("Whether litigation was contemplated in good faith and under serious consideration is a question of fact").  Accordingly, it would be premature to determine at the *pleadings* stage whether § 47(b)'s litigation privilege applies to the April 10 Letter.

18
19

Based on the foregoing, this Court should deny Epson's Motion to Dismiss Counts II-VI of Curtis' Amended Counterclaims under § 47(b)[4].

20

**V.   CONCLUSION**

21
22
23

Based on the foregoing, Curtis respectfully requests that this Court: (i) deny Epson's Motion to Dismiss in its entirety, and (ii) award Curtis any further relief that this Court deems just and equitable.

24
25
26
27
28

---

[4] Epson argues that neither its April 10 Letter nor its False Press Release "can form the basis for a § 17200 claim" because they are allegedly immunized by § 47(b)'s litigation privilege.  Opening Brief at 21-1.  However, as discussed, *supra*, Epson is wrong; litigation privilege does not apply.  Accordingly, this Court should deny Epson's Motion to Dismiss Count V.

1

2      Dated:  November 4, 2019        Respectfully submitted,

3                                      MAYER BROWN LLP
                                       CARMINE R. ZARLENGA
                                       JOHN NADOLENCO
4                                      A. JOHN P. MANCINI
                                       JONATHAN W. THOMAS
5                                      KRISTINE M. YOUNG

6                                      By: */s/ Carmine R. Zarlenga*
                                           Carmine R. Zarlenga
7
                                       CARMINE R. ZARLENGA *(pro hac vice)*
8                                      czarlenga@mayerbrown.com
                                       1999 K Street NW
9                                      Washington, DC 20006
                                       Telephone: (202) 263-3000
10                                     Facsimile: (202) 263-5227

11                                     A. JOHN P. MANCINI  *(pro hac vice)*
                                       jmancini@mayerbrown.com
12                                     JONATHAN W. THOMAS *(pro hac vice)*
                                       jwthomas@mayerbrown.com
13                                     1221 Avenue of the Americas
                                       New York, New York 10020
14                                     Telephone:  (212) 506-2500
                                       Facsimile: (212) 849-5895
15
                                       KRISTINE M. YOUNG  *(pro hac vice)*
16                                     kyoung@mayerbrown.com
                                       71 South Wacker Drive
17                                     Chicago, Illinois 60606
                                       Telephone: (312) 782-0600
18                                     Facsimile: (312) 701-7711

19                                     Attorneys for Defendant
                                       Curtis International Ltd.
20

21

22

23

24

25

26

27

28
                                       26