MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

*Attorneys for Defendant*
*Curtis International Ltd.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA –

## SOUTHERN DIVISION

| | |
|---|---|
| EPSON AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS INTERNATIONAL LTD., and TECHNICOLOR SA,<br><br>Defendants. | Case No. 8:19-cv-01469-DOC-ADS<br><br>**CURTIS INTERNATIONAL LTD.'S MEMORANDUM IN OPPOSITION TO EPSON AMERICA, INC.'S MOTION TO STRIKE PUNITIVE DAMAGES FROM AMENDED COUNTERCLAIM**<br><br>Date:       November 25, 2019<br>Time:       8:30 a.m.<br>Location:  Courtroom 9D<br><br>Hon. David O. Carter |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................... 1

II.   FACTUAL BACKGROUND ...................................................... 1

III.  LEGAL STANDARD ................................................................ 3

IV.   ARGUMENT ............................................................................ 4

    A.   Epson's Motion to Strike Fails Because Curtis Has Met The
Pleading Requirements for Punitive Damages Under Federal
Law ................................................................................................ 4

    B.   Curtis Has Plead Sufficient Facts to Support Claims For
Punitive Damages Under Cal. Civ. Code § 3294(b) ..................... 9

    C.   If The Court Determines That Curtis Has Not Plead Facts
Sufficient To Support A Claim for Punitive Relief, Curtis
Should Be Allowed Discovery To Learn Those Facts And
Granted Leave To Amend Once Such Facts Are Known ............... 11

V.    CONCLUSION ........................................................................ 12

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Admiral Insurance Co. v. Rodriguez*,
  No. SACV 11-01565, 2012 WL 13020022 (C.D. Cal. June 14,
  2012) ............................................................................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 5

*Brousseau v. Jarrett*,
  73 Cal. App. 3d 864 (1977) .............................................................................. 8

*Clark v. Allstate Ins. Co.*,
  106 F.Supp.2d 1016 (S.D. Cal. 2000) ............................................................... 4

*Clark v. State Farm Mut. Auto. Ins. Co.*,
  231 F.R.D. 405 (C.D. Cal. 2005) ................................................................. 1, 4

*Cyrus v. Haveson*,
  65 Cal. App. 3d 306 (1976) .............................................................................. 8

*Ducre v. Veolia Transportation*,
  No. CV 10–02358, 2010 WL 11549862 (C.D. Cal. June 14, 2010) .................. 3

*Erie R.R. v. Tompkins*,
  304 U.S. 64 (1938) ............................................................................................ 4

*Garcia v. New Albertson's, Inc.*,
  No. 2:13–CV–05941, 2014 WL 4978434 (C.D. Cal. Oct. 3, 2014) ................ 10

*Geringer v. Sierra Madre Police Dep't.*,
  No. CV 09-3966, 2010 WL 11601304 (C.D. Cal. Feb. 26, 2010) ..................... 1

*Greenwich Ins. Co. v. Rodgers*,
  729 F. Supp. 2d 1158 (C.D. Cal. 2010) ............................................................ 8

*Hyperion Fund, L.P. v. Samarium Tech. Group, Ltd.*,
  No. 2:07–cv–07505, 2009 WL 10699442 (C.D. Cal. Apr. 7, 2009) .................. 7

ii

*Ibekwe v. White*,
   No. 14–06523, 2014 WL 12616408 (C.D. Cal. Oct. 3, 2014) ........................... 12

*Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher*
   *Educ.*,
   616 F.3d 963 (9th Cir. 2010) ............................................................................ 12

*Mag Instrument, Inc. v. JS Prods., Inc.*,
   595 F.Supp.2d 1102 (C.D. Cal. 2008) ................................................................. 3

*Mophie Inc. v. Loza & Loza LLP*,
   2011 WL 13228076 (C.D. Cal. July 25, 2011) .................................................... 7

*Net-Com Services, Inc. v. Eupen Cable USA, Inc.*,
   No. CV 11-2553, 2012 WL 12887399 (C.D. Cal. Dec. 18, 2012) ........................ 3

*Rearden LLC V. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ............................................................................. 9

*Robinson v. Managed Accounts Receivables Corp.*,
   654 F.Supp.2d 1051 (C.D. Cal. 2009) ........................................................... 4, 11

*Ruhnke v. SkinMedica, Inc.*,
   No. SACV 14-0420, 2014 WL 12577172 (C.D. Cal. Sept. 5, 2014) ................... 10

*Securities and Exchange Com'n v. Levin*,
   232 F.R.D. 619 (C.D. Cal. 2005) ..................................................................... 3, 7

*U.S. v. Corinthian Colleges*,
   655 F.3d 984 ...................................................................................................... 12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 ...................................................................................................... 8

*White v. Ultramar, Inc.*,
   21 Cal.4th 563 (1999) ........................................................................................ 10

*Woodward v. Labrada*,
   No. EDCV 16-00189, 2016 WL 3436434 (C.D. Cal. May 12,
   2016) .................................................................................................................. 12

*Wyle Labs., Inc. v. Am. Home Assurance Co.*,
   No. CV 09–03528, 2009 WL 10675046 (C.D. Cal. Oct. 6, 2009) ........................ 8

iii

CURTIS INTERNATIONAL LTD.'S MEMORANDUM IN OPPOSITION TO EPSON AMERICA, INC.'S
MOTION TO STRIKE PUNITIVE DAMAGES FROM AMENDED COUNTERCLAIM; CASE NO. 8:19-CV-
01469-DOC-ADS

**Statutes**

Cal. Civ. Code 3294........................................................................................4, 8, 9, 10

**Other Authorities**

Fed. R. Civ. P. 8(a) ......................................................................................... 5

Fed. R. Civ. P. 15(a)(2)............................................................................................ 12

Federal Rule of Civil Procedure 9(b) ...........................................................5, 6, 7, 8

## I.   INTRODUCTION

"Motions to strike are disfavored and infrequently granted." *Geringer v. Sierra Madre Police Dep't.*, No. CV 09-3966, 2010 WL 11601304, at * 11 (C.D. Cal. Feb. 26, 2010). Epson's entire basis for its Motion to Strike Punitive Damages From Amended Counterclaim ("Motion to Strike") (Dkt. 112) is that Curtis has purportedly not pleaded facts adequate to establish claims for punitive damages in connection with Counts II (Intentional Interference With Business Relations and Economic Advantage Under California Law) and IV (Trade Libel and Disparagement) of its Amended Counterclaims under the heightened pleading standards for punitive damages under *California law*. As a threshold matter, Epson's Motion to Strike based on the pleading requirements of California law is flawed because *federal law*, not California law, governs punitive damages claims procedurally with respect to adequacy of the pleadings. *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005).

As a separate and independent ground for the denial of its motion, Epson's arguments fail because Curtis *has* alleged facts to support its claims for punitive damages with particularity, specifying the who, what, where and when details of the false, misleading, fraudulent and defamatory statements made by Epson, satisfying the pleading requirements under both federal law and California law (although inapplicable). For all of the reasons set forth herein, Epson's Motion to Strike should be denied.

## II.   FACTUAL BACKGROUND

Almost a year ago, Epson commenced this lawsuit against Curtis alleging that Curtis has falsely advertised the lumen claims on certain projector products sold under the RCA brand. *See generally* Dkt. No. 1. A lumen is a measurement of light intensity or "flux" as specified by the International System of Units. There are two primary, valid ways of characterizing the lumens capabilities of projectors: (i) by

light source luminance ("LED"), or (ii) output luminance. LED luminance can be specified as an individual red, green, and blue luminance, or the balanced white luminance for a given color temperature. Output luminance can be specified as "ANSI" lumens, which refers to the lumens-measurement procedure established by the American National Standards Institute, or specified as output lumens. *See* Dkt. No. 106 at ¶¶ 139-141 ("Am. Counterclaims"). In most instances, Curtis's lumen claims are based on "LED lumens," which are measured differently than ANSI lumens. *Id*. at ¶ 138. Curtis has independent testing that shows that its LED lumen claims for the Accused Products are accurate. *Id*. at ¶¶ 107, 130. Epson wrongfully assumes that ANSI lumens must be used even though there is no legal requirement stating as such, and Epson knows this. *Id*. at ¶¶ 106, 139-41.

As alleged in Curtis's Amended Counterclaims, Epson has made false and defamatory statements to Curtis's customers and to consumers about Curtis and its products. *See generally* Am. Counterclaims. In particular, over seven months prior to filing this lawsuit, Epson's Vice President of Consumer Sales and Marketing sent a letter to Curtis's largest customer, Walmart, falsely accusing Curtis of misstating the lumens ratings on its projector products and asking Walmart to remove Curtis's products from its stores. *Id*. at ¶¶ 92-132. Epson also issued a press release on its company website, falsely accusing Curtis of misstating the lumens ratings on its projector products; the press release is heavily laden with false information about Curtis and its products and remains published to this day. *Id*. at ¶¶ 133-47. Epson's actions were undertaken with the intent of interfering with, disrupting and impeding Curtis's business relationship and contracts with Walmart, eliminating lower priced projector products at retail, damaging the reputation of Curtis and its products in the eyes of consumers, and gaining increased sales of Epson's higher priced products to the detriment of Curtis, its customers and consumers who benefit from lower priced projectors. *Id*. at ¶¶ 91, 118-124, 146.

### III.   LEGAL STANDARD

"Motions to strike are generally regarded with disfavor." *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F.Supp.2d 1102, 1106 (C.D. Cal. 2008); *Admiral Insurance Co. v. Rodriguez*, No. SACV 11-01565, 2012 WL 13020022, at *3 (C.D. Cal. June 14, 2012) ("Motions to strike are generally disfavored, and constitute a drastic remedy." (quotations omitted)).  "Given [the] disfavored status [of motions to strike], courts often require a showing of prejudice by the moving party before granting the requested relief." *Mag Instrument*, 595 F.Supp.2d at 1106. (citations omitted).  Further, it is well established that "[t]he proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6), not Rule 12(f)," as Epson has done. *Ducre v. Veolia Transportation*, No. CV 10–02358, 2010 WL 11549862, at * 3 (C.D. Cal. June 14, 2010).

In considering either a motion to strike under Rule 12(f) or a motion to dismiss under Rule 12(b)(6) (should the Court decide to consider Epson's Motion to Strike as such), the court must view the pleadings "in the light most favorable to the non-moving party and resolve any doubt as to the relevance of the challenged allegations in favor of plaintiff." *Securities and Exchange Com'n v. Levin*, 232 F.R.D. 619, 625 (C.D. Cal. 2005); *Veolia*, 2010 WL 11549862, at * 3 (explaining that, when considering a Rule 12(b)(6) motion, "[t]he court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party").  "If there is *any doubt* as to whether the allegations might be an issue in the action, courts will deny the motion." *In re 2TheMart.com, Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000) (emphasis in original); *Net-Com Services, Inc. v. Eupen Cable USA, Inc.*, No. CV 11-2553, 2012 WL 12887399, at *2 (C.D. Cal. Dec. 18, 2012) ("[T]he motion must be denied if there is any doubt as to the relevancy of the challenged allegation."); *Admiral Insurance*, 2012 WL 13020022) (denying motion to dismiss).

## IV.    ARGUMENT

Curtis has pleaded facts to support its claims for punitive relief with particularity, has satisfied the pleading requirements for punitive relief under federal law and has provided adequate support for its claims for punitive damages under Cal. Civ. Code § 3294.  For these reasons, Epson's Motion to Strike should be denied.

### A.    Epson's Motion to Strike Fails Because Curtis Has Met The Pleading Requirements for Punitive Damages Under Federal Law.

The crux of Epson's argument that Curtis's request for punitive damages should be stricken from its Amended Counterclaims (Counts II and IV)[1] is that there is a heightened pleading standard for claims of fraud, oppression or malice under Cal. Civ. Code § 3294. Epson's argument is grounded on a mistaken premise—it is federal law that governs pleadings requirements, not California law. Epson completely ignores this important point, which is fatal to Epson's motion.

"It is well-established that federal courts sitting in diversity must apply state substantive law and *federal* procedural rules." *Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2000) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, (1938)).  As this Court has made clear, "[w]hile California law governs substantive claims for punitive damages . . . the Federal Rules of Civil Procedure govern the punitive damages claims procedurally with respect to the adequacy of pleadings." *State Farm*, 231 F.R.D. at 406.  "[T]he fact that California courts may impose a heightened pleading requirement on claims for punitive damages is irrelevant, because such a requirement conflicts with federal procedural law." *Robinson v. Managed Accounts Receivables Corp.*, 654 F.Supp.2d 1051, 1066 (C.D. Cal. 2009) (denying motion to strike).

---

[1] Count II of Curtis's Amended Counterclaims is for Intentional Interference With Business Relations and Economic Advantage Under California Common Law, and Count IV of Curtis's Amended Counterclaims is for Trade Libel and Disparagement.

4

The governing federal civil procedure requires only that a plaintiff provide "a short and plain statement of the claim showing that [plaintiff] is entitled to relief, and . . . a demand for judgment for the relief [plaintiff] seeks." FED. R. CIV. P. 8(a). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must only provide the defendant with "fair notice" of what claims are brought against them and "the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged *generally*." FED. R. CIV. P. 9(b) (emphasis added). Curtis has done just that, alleging the particularity of Epson's actions that constitute fraud and that such fraudulent actions were with malice, intent and knowledge.

Specifically, Curtis has sufficiently alleged the factual circumstances surrounding its claims for punitive damages and the state of the mind required to support a claim for punitive damages by alleging, for example:

- That one of Curtis's largest customers is Walmart, and that Epson was well aware of Curtis's economic and contractual relationship with Walmart as well as other major retailers and the importance of those relationships. Am. Counterclaims at ₱₱ 158, 160.

- That Epson knowingly, willfully, intentionally and maliciously took actions to disrupt Curtis's relationship with Walmart and one other major retailer by conveying false, misleading and defamatory statements about Curtis and its products to Walmart and at least one other major retailer. *Id*. at ₱ 161.

- That on April 10, 2018, Epson's Vice President of Consumer Sales and Marketing, Mike Isgrig, sent a letter to Walmart's E-Commerce Officer, Terrance Oliver (the "April 10 Letter") that provided false accusations and information about Curtis and its RCA-brand RPJ116 home-theater projector product and requested that Walmart remove that product from its stores. *Id*. at ¶¶ 92-98. A copy of the April 10 Letter is attached to Curtis's Amended Counterclaims as Exhibit A thereto.

- That Mr. Isgrig's actions were taken "on behalf of Epson." *Id*. at ¶¶ 93-98, 107.

- That, on March 29, 2019, Epson published a false press release on its website (the "False Press Release"), falsely advertising and conveying that Curtis's projectors sold under the RCA brand name and other brand names "use[ing] false lumen claims" and conveying that there is an "industry standard" for measuring lumens, which is a requirement when this is not the case. *Id*. at ¶¶ 133-146. A copy of the False Press Release is attached to Curtis's Amended Counterclaims as Exhibit B thereto.

- That Epson intentionally and falsely disparaged the quality of property, goods, character and reputation of Curtis. *Id*. at ¶ 172.

- That Epson knew that its statements about Curtis and Curtis's products were untrue and/or also acted with reckless disregard for the truth or falsity of the statements. *Id*. at ¶ 173.

- That Epson knew or should have recognized that someone else, including customers of Curtis and consumers, might act in reliance on the statements made by Epson, causing Curtis financial loss. *Id*. at ¶ 173.

- That the statements made by Epson were made with the intent, knowledge and expectation that the communication was improper and would harm Curtis. *Id*. at ⁋ 174.
- That Epson's actions have caused and continue to cause economic and reputational harm to Curtis. *Id*. at ⁋⁋ 162, 175.

In nearly sixty paragraphs of Curtis's Amended Counterclaims, Curtis spells out the details of its factual allegations underlying its prayer for punitive relief. As set forth *supra*, Curtis's Amended Counterclaims provide the specific facts—along with concrete examples of the false statements made by Epson and its Vice President of Consumer Sales and Marketing on behalf of Epson attached as exhibits—which explains Epson's fraudulent, malicious and oppressive conduct in detail. This detail includes the manner of the statements, the dates of Epson's statements to the extent known, the name and title of an executive at Epson who made statements to Walmart on behalf of Epson, the specific content of the statements and the recipients of the statements (*i.e.*, consumers and the public at large and Curtis's largest customer, Walmart) to the extent known.

The level of detail provided by Curtis is much more than mere conclusions and is more than sufficient to put Epson on fair notice of the claims against it and satisfy the pleading requirements for fraud under FED. R. CIV. P. 9(b). *Mophie, Inc. v. Loza & Loza LLP*, 2011 WL 13228076, at *4 (C.D. Cal. July 25, 2011) (denying motion to strike claims based on fraud where the plaintiffs provided details about defendant's actions and statements and how they were false and misleading); *Levin*, 232 F.R.D. at 624 (denying motion to strike fraud claims finding that the complaint "complies with the strictures of Rule 9(b)" and "identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer"); *Hyperion Fund, L.P. v. Samarium Tech. Group, Ltd.*, No. 2:07–cv–07505, 2009 WL 10699442, at *3 (C.D. Cal. Apr. 7, 2009) (denying motion to strike fraud claims

where the plaintiff's complaint alleged the time, place, and specific content of the false representations).  Remarkably, all of the cases cited by Epson, in support of its argument that Curtis has not sufficiently plead claims for punitive relief, are distinguishable in that the plaintiffs did not plead details of the defendant's fraudulent actions as Curtis has done (*see, e.g.*, *supra*) and only plead conclusory statements. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (did not identify the alleged "misinformation" distributed by the defendant); *Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977) (did not allege details of fraudulent conduct and only alleged conclusions); *Cyrus v. Haveson*, 65 Cal. App. 3d 306, 316-17 (1976) (did not allege facts to support an award of punitive damages).

Curtis has also satisfied the pleading requirements for malice and oppression necessary to support its claims for punitive damages, which may be averred generally. FED. R. CIV. P. 9(b); *Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d. 1158, 1164 (C.D. Cal. 2010) ("Defendant has alleged malice generally.  That is all that is required under federal pleading standards."); *Wyle Labs., Inc. v. Am. Home Assurance Co.*, No. CV 09–03528, 2009 WL 10675046, at * 3 (C.D. Cal. Oct. 6, 2009) ("A long line of federal decisions has interpreted these rules as setting a low threshold for the pleading of punitive claims alleging malice under California Civil Code § 3294."). For example, in Count II of Curtis's Amended Counterclaims, Curtis alleges that Epson's conduct was "with actual malice and intent to cause harm to Curtis and its brand," and in Count IV, Curtis alleges that Epson's conduct was "tortious, reckless, oppressive, fraudulent, and malicious."  Am. Counterclaims at ¶¶ 167, 178.

Epson argues that it is "entirely disingenuous" for Curtis to argue that Epson acted maliciously towards it because Epson did not mention Curtis by name in the April 10 Letter to Walmart.  Acting disingenuously itself, Epson omits from its argument that the April 10 Letter clearly mentions Curtis's brand (RCA) and

associated product model and specifically requests that Walmart remove this product from Walmart.com and from Walmart stores. *See* Am. Counterclaims at Exhibit A. Epson also omits that, in its contemporaneously filed motion to dismiss Curtis's Amended Counterclaims, Epson admits that its April 10 Letter to Walmart "directly refers to Curtis' [alleged] false advertising, which is the subject of this lawsuit." Dkt. No. 116 at 16. Moreover, the entire purpose of a trademark/brand is to identify the source of goods or services, and in its April 10 Letter to Walmart, Epson clearly mentions the RCA brand, the *source of which is Curtis*. Epson concedes as much in its Amended Complaint in this lawsuit. *See* Dkt. No. 22 at ¶ 22 (Epson alleging that Curtis sells its "projectors under various brand names, including, but not limited to, 'RCA' []"); *see also Rearden LLC V. Rearden Commerce, Inc.*, 683 F.3d 1190, 1204 (9th Cir. 2012) ("The purpose of a trademark is to help consumers identify the source [of goods]"). Not surprisingly, Epson cites no law in support of its contention that naming a party by its trademark/brand and/or product does not constitute mentioning a party or that mentioning a party by its corporate name is necessary to support a prayer for punitive relief or claim for fraud or malice, nor can it, as there is no such requirement. Epson also fails to note that Curtis is clearly mentioned by name *over ten times*, as well as by brand name (RCA) and product model numbers, in the False Press Release, which was distributed to consumers and the public at large and remains published on Epson's website to this day.[2]

### B. Curtis Has Plead Sufficient Facts to Support Claims For Punitive Damages Under Cal. Civ. Code § 3294(b).

Epson argues that Curtis's claims for punitive relief should be stricken because Curtis does not allege that the statements by Epson that Curtis complains of were made by a "managing agent"[3] of Epson as required to establish liability for

---

[2] Epson alleges that its statements to Walmart and the False Press Release are somehow privileged. As enumerated in Curtis's Opposition to Epson's Motion to Dismiss, which is incorporated by reference herein, this is not possibly the case.
[3] The California Supreme Court has defined "managing agent" as "those corporate employees who exercise substantial independent authority and judgment in

1   punitive damages under Cal. Civ. Code § 3294(b).[4]  As explained *supra*, the Federal

2   Rules of Civil Procedure govern Curtis's punitive damages claims procedurally with

3   regard to the adequacy of the pleadings.  Epson's argument that Curtis has not

4   adequately plead facts sufficient to establish that Epson is liable for the acts of fraud,

5   malice and oppression to support a claim for punitive relief fails because Curtis has

6   clearly alleged that the acts complained of were (i) by Epson's Vice President of

7   Consumer Sales acting "*on behalf of Epson*" in the case of the April 10 Letter (*see*

8   Am. Counterclaims at ¶¶ 93-96, 98, 105, 107, 125-131 (emphasis added)), and (ii)

9   published on Epson's corporate website in the case of the False Press Release (*see*

10  *id*. at ¶ 133). *Ruhnke v. SkinMedica, Inc.*, No. SACV 14-0420, 2014 WL 12577172,

11  at *11 (C.D. Cal. Sept. 5, 2014) (explaining that decisions tied to marketing are

12  "inherently tied to corporate policy and Plaintiff's allegations support a reasonable

13  inference that the alleged fraudulent omissions were made, authorized, ratified, or

14  consciously disregarded by an officer, director, or managing agent of [defendant]").

15      Moreover, if there is any question as to whether Epson's Vice President of

16  Consumer Sales (Mr. Isgrig) is a "managing agent" of Epson as defined in Cal. Civ.

17  Code § 3294(b) or whether an officer, director or managing agent of Epson had

18  knowledge and conscious disregard for or authorized the statements made by

19  Epson's Vice President of Consumer Sales to Walmart or the publication and

20  dissemination of the False Press Release, these are questions of fact that are not to

21  be decided at the pleading stage. *Garcia v. New Albertson's, Inc.*, No. 2:13–CV–

22  05941, 2014 WL 4978434, at *8 (C.D. Cal. Oct. 3, 2014) (holding that "the question

23

24  their corporate decision making so that their decisions ultimately determine
    corporate policy." *White v. Ultramar, Inc.*, 21 Cal.4th 563, 567 (1999).

25  [4] Cal. Civ. Code 3294(b) provides, in relevant part, that an employer shall not be
    liable for punitive damages based on the acts of an employee unless the employer

26  "authorized or ratified the wrongful conduct for which the damages are awarded or
    was personally guilty of oppression, fraud, or malice." *Id*. In cases involving a

27  corporate employer, "the advance knowledge and conscious disregard,
    authorization, ratification or act of oppression, fraud, or malice must be on the part

28  of an officer, director, or managing agent of the corporation." *Id*.

of whether an employee is a managing agent is a question of fact for decision on a case-by-case basis, and that in light of California precedent, judgment as a matter of law is inappropriate at this stage of litigation.") (quotations omitted).

Construing Curtis's Amended Counterclaims in the light most favorable to Curtis, it can be assumed that an executive-level employee such as a Vice President is a "managing agent" and/or that Mr. Isgrig's statements to Walmart were with the advance knowledge and conscious disregard or authorization or ratification by an officer(s), director(s), or managing agent(s) of Epson. *See Robinson v. Managed Accounts Receivables Corp.*, 654 F.Supp.2d 1051, 1066 n.13 (C.D. Cal. 2009) (explaining that, construing the complaint in the light most favorable to plaintiff, the court could assume that the conduct of defendant's employee was authorized by his superiors). Likewise, it can be assumed that the False Press Release that is published on Epson's corporate website is with the advance knowledge and conscious disregard or authorization or ratification by an officer(s), director(s) or managing agent(s) of Epson. It is implausible that the False Press Release published on Epson's corporate website, which is the subject of a lawsuit and has *remained published for over eighteen months*, is published without the knowledge and conscious disregard or authorization or ratification by Epson's senior leadership (*i.e.*, officer(s), director(s) or managing agent(s) of Epson).

**C.    If The Court Determines That Curtis Has Not Plead Facts Sufficient To Support A Claim for Punitive Relief, Curtis Should Be Allowed Discovery To Learn Those Facts And Granted Leave To Amend Once Such Facts Are Known.**

Curtis has pleaded all facts known to it about Epson's offending conduct at this time, and some of the details pertaining to Epson's conduct are facts to be learned in discovery. For example, regarding the False Press Release, the details about what person(s) were directly responsible for drafting and publishing the False Press Release are not presently known to Curtis. If the Court concludes that additional details pertaining to Curtis's Amended Counterclaims must be pleaded to

11

support a claim for punitive relief, Curtis should be allowed leave to amend its pleadings to include those facts after those facts are learned in discovery; that not all facts are known to Curtis should not preclude it from seeking punitive relief. FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Woodward v. Labrada*, No. EDCV 16-00189, 2016 WL 3436434, at * 12 (C.D. Cal. May 12, 2016) (postponing decision on motion to strike until after discovery is conducted to learn pertinent facts); *U.S. v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011 ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.") (quoting *Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher Educ.,* 616 F.3d 963, 972 (9th Cir. 2010); *Ibekwe v. White*, No. 14–06523 , 2014 WL 12616408, at * 1 (C.D. Cal. Oct. 3, 2014) (denying motion to strike and granting leave to amend, noting that "it is not clear that it would be impossible for [plaintiff] to plead a set of facts that would properly state a claim.")

## V.    CONCLUSION

For the reasons set forth herein, Curtis respectfully requests that the Court deny Epson's Motion to Strike.  Alternatively, Curtis respectfully requests that a decision on Epson's Motion to Strike be postponed until after discovery is conducted to learn all pertinent facts and until Curtis is afforded leave to amend its pleadings once additional facts are known.

Dated:  November 4, 2019          Respectfully submitted,

MAYER BROWN LLP
CARMINE R. ZARLENGA
JOHN NADOLENCO
A. JOHN P. MANCINI
JONATHAN W. THOMAS
KRISTINE M. YOUNG

By: */s/Carmine R. Zarlenga/*
Carmine R. Zarlenga

CARMINE R. ZARLENGA *(pro hac vice)*

12

czarlenga@mayerbrown.com
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-5227

A. JOHN P. MANCINI  *(pro hac vice)*
jmancini@mayerbrown.com
JONATHAN W. THOMAS *(pro hac vice)*
jwthomas@mayerbrown.com
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile: (212) 849-5895

KRISTINE M. YOUNG  *(pro hac vice)*
kyoung@mayerbrown.com
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

*Attorneys for Defendant*
Curtis International Ltd.

CURTIS INTERNATIONAL LTD.'S MEMORANDUM IN OPPOSITION TO EPSON AMERICA, INC.'S
MOTION TO STRIKE PUNITIVE DAMAGES FROM AMENDED COUNTERCLAIM; CASE NO. 8:19-CV-
01469-DOC-ADS